COWOKOCHEE v. CHAPMAN et al.
(two cases.)
WILDCAT et al. v. SAME.

Nos. 5979, 6847, 7220—Opinion Filed Feb. 12, 1918.

(171 Pac. 50.)

(Syllabus.)

1. **Indians — Receivers — Lands — Inheritance—Discretion of Court.**

In a suit in ejectment and to clear the title to certain lands C. answered, and, by way of cross-petition, set up title thereto in himself, assailed for fraud in its procurement his certain deed purporting to convey the same to one of his codefendants, and prayed that said deed be canceled and his title quieted. On his application for the appointment of a receiver pendente lite, it appeared that A., a citizen of the Creek Nation and duly enrolled as such, died intestate and unmarried, after receiving his allotment, without mother, who was a Creek, or issue him surviving, leaving him surviving C., his father, a full-blood Creek, but enrolled as a Seminole, and W., a half-brother, enrolled as a Seminole, and J., a brother of the full blood, a citizen of the Creek Nation and duly enrolled as such. Section 6 of the Supplemental Agreement (Act Cong. June 30, 1902, c. 1323, 32 Stat. 500) and chapter 49 of Mansfield's Digest of the Laws of Arkansas construed together, and

held that, as the land was ancestral and came to A. by the blood of both tribal parents, C., the father, as a Creek descendant of A., inherited one-half thereof, and J., the other by right of representation of his mother. And where it further appeared that C., after descent cast by A., made, executed, and delivered a deed purporting to quitclaim his interest in the allotment of A. to the defendant grantee named therein, which, before delivery, was duly approved by the judge of the county court in which the administration of the estate of A. was pending, held, further, that the judge in chambers before whom the application was made did not abuse his discretion in overruling the same and refusing to appoint a receiver.

2. **Appeal and Error — Order Refusing to Appoint Receiver—Review.**

Where, after a consideration of the claim made by a party on his application for the appointment of a receiver, the appointment is refused, and on appeal by him to this court his interest in the property appears improbable and no abuse of discretion is shown, the order refusing to appoint a receiver will not be disturbed.

3. **Appeal and Error — Vacation or Modification—Statute.**

Where, pending a suit in ejectment and to clear the title to certain lands—the allotment of A., deceased—C. answered and filed his cross-petition against the plaintiffs and his codefendants, and set up an interest in the land, and prayed that his title thereto be quieted; and where, pending the suit, another defendant, claiming adversely to him, went into the county court of the county granting the final order of distribution of A.'s estate and invoked the jurisdiction of that court to enter an order nunc pro tunc amending the final order of distribution so as to show that his grantor, who was J., a brother of deceased, inherited the entire allotment to the exclusion of C., the father, which the court refused to do, whereupon the district court on appeal reversed the county court, whereupon C. brought the case here, where the same was numbered 6055, and consolidated by agreement of counsel with this, the ejectment suit brought here on appeal—held, that as cause number 6055 was an independent proceeding in another court, no part of which found its way in the ejectment suit, that no order made therein is such an intermediate order involving the merits of the ejectment suit as this court is authorized, in considering said suit on appeal, to reverse, vacate, or modify under the provisions of Rev. Laws 1910, § 5236.

4. **Appeal and Error —Dismissal and Nonsuit — Dismissal of Cross-Petition —Discretion of Court—Hearing.**

Pending a suit in ejectment and to clear the title to certain lands, C. answered and filed a cross-petition setting up his interest therein, and thereafter filed a written dismissal of his cross-petition, but paid no part of the costs. Rev. Laws 1910, § 5126, con-

strued, and held, that such did not operate as a dismissal thereof as to him, and that the court did not err in overruling his motion to reinstate the same. And where, the cause coming on to be heard on the issues joined between plaintiffs and defendants, he moved to continue the cause, which was overruled, and judgment rendered and entered that C. "is no longer a party to this proceeding and has no right, title, or interest in the land" in controversy, and thereafter proceeded to trial and to final judgment upon the issues joined between the other parties to the suit, held that, as the motion was addressed to the discretion of the court, his action thereupon will not be disturbed in the absence of an abuse of discretion, which is not claimed. Held, further, that the court erred in rendering final judgment against C. without giving him his day in court as a defendant and upon the issues joined upon the allegations of his answer and cross-petition.

**5. Indians — Allotted Land — Evidence — Instructions.**

A suit was brought by J.'s widow and heirs in ejectment and to clear their title to certain lands allotted to A., deceased. The evidence disclosed that A. died seized thereof in fee in 1905, leaving him surviving no mother, who was a Creek, nor issue, but C., his father, a full-blood Creek enrolled as a Seminole, and W., a half-brother enrolled as a Seminole, and J., a brother of the full blood enrolled as a Creek, and that J. inherited an undivided half interest in the allotment and died. The case turned upon the question of whether J. had parted with the title thereto to defendants Chapman and McFarlin before he died; concerning which the evidence further disclosed that J., prior to the removal of his restrictions, sold, and by warranty deed dated March 31, 1906, undertook, as the sole heir of A., to convey said land for $800 cash in hand to the grantee named therein, which said deed was void; and, after his restrictions were removed at the instance of said grantee, on April 28, 1906, without further consideration, made, executed, and delivered a similar deed conveying the same land to G., who thereafter deeded it to the grantee named in the first deed and another, parties defendant Chapman and McFarlin. Held insufficient to justify an instruction that the first deed was void, and that if the jury found for the making of the second deed a contract or agreement was entered into before the removal of restrictions the latter deed was also void, and hence the court did not err in refusing so to charge.

**6. Indians — Allotted Land — Quantum of Indian Blood—Conclusiveness of Roll.**

Under Act April 26, 1906, c. 1876 (34 Stat. 137), providing that for all purposes the quantum of Indian blood possessed by any member of the Five Civilized Tribes shall be determined by the rolls of citizens thereof approved by the Secretary of the Interior (Act June 21, 1906, c. 3504 [34 Stat. 325]), requiring the Secretary of the Interior, on completion of the approved rolls, to prepare and print the same in a permanent record book, and Act May 27, 1908, c. 199, § 3 (35 Stat. 312), declaring that the rolls of citizenship of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen, the Creek Roll of Indians by Blood, as prepared by law, is conclusive, and not subject to collateral attack.

Error from District Court, Creek County; Tom D. McKeown, Trial Judge.

Suit in ejectment and to clear title by Chotkey Wildcat, a minor, by his guardian, and others, against Cowokochee, James A. Chapman, and R. W. McFarlin, with answer and cross-petition by Cowokochee and by his codefendants to quiet title, and amended answer and cross-petition by Cowokochee to amend an order of distribution, and application by him for the appointment of a receiver pendente lite. From the judgment plaintiffs and Cowokochee bring error. Affirmed as between plaintiffs and defendants Chapman and McFarlin, and reversed as to Cowokochee.

Lewis C. Lawson, for plaintiff in error Cowokochee.

John W. Willmott, J. G. Harley, and Hainer, Burns & Toney, for plaintiffs in error Chotkey Wildcat and others.

Harry H. Rogers and N. A. Gibson, for defendants in error.

TURNER, J. On June 4, 1913, in the district court of Creek county, Chotkey Wildcat, a minor, by his guardian, and Joshua, Simmer, and Luvinia Cunny, minors, by their guardian, and Lousanna Marparyecher and Geo. M. Swift, plaintiffs in error, sued Cowokochee, James A. Chapman, R. M. McFarlin, defendants in error, and McMann Oil Company, a corporation, in ejectment for the S. E. ¼ of section 27, township 18 north, range 7 east, containing 160 acres, and to clear their title thereto.

The petition, as amended, substantially states: That the land in question was the allotment of Albert Wildcat, a citizen of the Creek Nation, who died intestate, seised thereof in fee, in 1905, leaving him surviving as his only heir at law his brother, John Wildcat, a citizen of the Creek Nation; that John died intestate, seised thereof in fee, in 1910, leaving him surviving as his only heirs at law said Lousanna, his widow, and their four minor children, Chotkey Wildcat, Joshua, Simmer, and Luvinia Cunny, who thereby became the owners thereof; that she and

said minors, acting through their respective guardians, had theretofore made, executed, and delivered to plaintiff Swift certain oil and gas leases on said land, copies of which were thereto attached, marked Exhibits C, D, and E, and that the object of the suit was to put the lessee in possession of the land; that they were entitled to its immediate possession; and that defendants wrongfully detained the same. For a second cause of action they further state that defendants claim some interest in the land adverse to plaintiffs under certain void conveyances, to wit: A warranty deed dated March 31, 1906, from John Wildcat, as the sole heir of Albert Wildcat, purporting to convey the land to the defendant Chapman; a warranty deed dated April 28, 1906, from John Wildcat, as the sole heir of Albert Wildcat, purporting to convey the land to H. B. Gooch, a warranty deed dated January 28, 1907, from John Wildcat and wife purporting to convey the land to J. Coody Johnson; a quitclaim deed dated October 12, 1907, from Hampton B. Gooch and wife, purporting to convey the land to defendants James A. Chapman and R. M. McFarlin; a warranty deed dated January 11, 1908, from one Albert Wildcat, purporting to convey the land to Cecil Taylor; a warranty deed dated January 13, 1908, from said Taylor, purporting to convey the land to J. Garfield Buell; a quitclaim deed dated December 21. 1908, from J. Coody Johnson, purporting to convey the land to the defendant Chapman; a quitclaim deed dated October 22, 1909, from J. Garfield Buell. purporting to convey the land to defendant Chapman; a quitclaim deed dated March 18, 1911. from Watty Wildcat, purporting to convey the land to said Chapman; a quitclaim deed dated April 27, 1912, from Watty Wildcat, purporting to convey the land to defendant Chapman; a quitclaim deed dated January 20, 1913, from defendant Cowokochee, whom they alleged to be a full-blood Seminole, and hence took no interest in the land, purporting to convey the land to said Chapman—all of which were duly recorded, and asked to be set aside for certain reasons stated.

For answer and cross-petition, after a general denial, Cowokochee alleged that he was the father of Albert Wildcat, a citizen of the Creek Nation and duly enrolled as such; that John was his brother of the full blood, and was also a citizen of the Creek Nation duly enrolled as such, and Watty Wildcat, his brother of the half blood, was a Seminole and duly enrolled as such; that all the deeds sought to be set aside were void for the reasons stated in the petition

and for other reasons set forth by him; that after the death of Albert, John Wildcat died in 1910, leaving him surviving said Lousanna, his widow, and Chotkey Wildcat and Joshua, Simmer, and Luvinia Cunny, his children, and that they executed the leases as stated, but says that he is not a full-blood Seminole, although enrolled as such, but is a full-blood Creek, and that his father and mother were also full-blood Creeks and duly enrolled as such, and that, on the death of Albert, he, under chapter 49 of the Statutes of Arkansas, inherited in said land, if the same were a new acquisition, a life estate, and, if ancestral, at least one-half thereof in fee with his son John; that all the deeds set forth in plaintiffs' petition constitute a cloud upon his title to the land, and are void for certain reasons which he states, and that the quitclaim deed from him dated January 20, 1913, purporting to convey his interest in the land to the defendant Chapman, is also void for fraud in its procurement; and prayed, in effect, that his rights in the land be adjudged and decreed and his title thereto quieted.

The McMann Oil company disclaimed, and passed out of the case.

For answer the defendants Chapman and McFarlin, after general denial, admitted that Albert Wildcat died a Creek citizen as stated, seised and possessed of the land in controversy, leaving him surviving as his only heir at law John Wildcat, also a Creek citizen, but alleged that Albert died in 1903. They further deny the execution of the lease to plaintiff Swift, and that neither he nor plaintiffs have any interest in or are entitled to possession of the land. They admit the existence of all the deeds sought to be set aside, but deny that the deed from Cowokochee to them, dated January 20, 1913, is void, but allege the same to be good and to convey to them all his right, title, and interest, if any, in the land; and while they disclaim any interest under the deed of March 31, 1906, from John Wildcat to the defendant Chapman, they rely to support their title upon the deed of Cowokochee to them, dated January 20, 1913, and the deed dated April 28, 1906, from John Wildcat to Gooch, and the deed dated October 12, 1907, from Gooch to them, and the deed dated January 20, 1907, from John Wildcat to J. Coody Johnson, and a quitclaim deed dated December 21, 1908, from J. Coody Johnson to the defendant Chapman. By way of cross-petition they further state that Albert Wildcat died intestate and without issue, leaving him surviving as his only heir at law John Wildcat, a brother of the full blood duly enrolled as a Creek citizen of the half

blood. They then set up the deed of Cowokochee to Chapman aforesaid, which, they allege, was duly approved by the county court of Seminole county, and passed to them his title, if any, and that the Swift leases were taken while they were in adverse possession of the land, and for that reason are void, and pray that their title to the land be quieted.

After issue joined by answer to the cross-petitions and reply came Cowokochee, and for amended answer, in effect, set up, as evidence of his right to inherit a share in the land, that the county court of Seminole county, in a final order of distribution of the estate of Albert Wildcat, a certified copy of which he files as an exhibit, on October 7, 1912, adjudged and decreed him to be entitled to share equally therein with John Wildcat as the sole heirs at law of Albert; and again assailed for fraud in its procurement his deed of January 2, 1913, purporting to quitclaim the land to Chapman, and prayed relief as in his original answer and for general relief. To this plaintiffs filed a general denial, and assailed said proceedings of the county court of Seminole county as void for certain reasons, and again alleged that Cowokochee took no interest in the land. To this amended answer Chapman and McFarlin, after general denial, specifically denied that Cowokochee took any interest in the land, but allege, if he did, he parted with his title therein to Chapman by said deed of January 20, 1913. They specifically deny that the county court of Seminole county adjudged and decreed as charged, and allege that on October 7, 1912, said court adjudged and decreed defendant Cowokoche to be a Seminole of the full blood duly enrolled as such, and that he inherited no interest in the land, and filed as an exhibit a certified copy of a nunc pro tunc order of that court, dated October 7, 1913, correcting its order of October 7, 1912, so as to show that Cowokochee took no part of the allotment of Albert Wildcat. Then came Cowokochee, and by leave of court filed both a second amended answer and cross-petition, and for supplemental matter set up that since his last pleading, to wit, on October 7, 1913, the county court of Seminole county, at the instance of defendant, had set aside and modified its final order of distribution of the estate of Albert Wildcat, dated October 7, 1912, wherein the court found that he, and the father, and John Wildcat as the brother, were entitled to share equally in the estate of Albert Wildcat, and had entered an order nunc pro tunc, in effect, that John Wildcat was the sole heir of Albert. He alleged that the same was void for certain reasons, and asked that the same be canceled and set aside. Of the over 200 pages of so-called pleadings, it is only necessary to add that, after plaintiffs had come in and stood upon the nunc pro tunc order of the county court of Seminole county dated October 7, 1913, which, in effect, decreed Cowokochee to have no interest in the land, Cowokochee applied to the judge in chambers to appoint a receiver pendente lite.

After response to the application, there was a hearing before the judge; whereupon A. D. Norvell, judge of the county court of Seminole county, in support of the application, testified that he became such January 6, 1913; that on January 20, 1913, Cowokochee and his attorney, accompanied by an interpreter, appeared in his court to secure the approval of his quitclaim deed to Chapman of the land in controversy; that the attorney made known to the court that Cowokochee had employed him on a contingent fee of one-half to sue for and recover his interest in the land; that he did not think Cowokochee had much interest in it; that his chances to recover were not good; that the land was not worth much; that Chapman wanted the land, and that the $300 named as the consideration in the deed was what he was willing to pay in compromise of Cowokochee's claim thereto; that he thought it would be to the best interest of Cowokochee to accept it, and that the deed be approved; that Cowokochee understood and agreed to it, and had received one-half of the $300. The judge further testified that Cowokochee could not speak English, but the whole thing was explained to him through the interpreter; after which the deed was approved in open court, and possession thereof turned over to Mr. Turner, the attorney. And that thereupon the court rendered and entered an order of confirmation, the pertinent part of which reads:

"That the petitioner herein has settled and compromised his contention with the said James A. Chapman, grantee of said John Wildcat, and in consideration of the sum of $300 cash has agreed to execute a quitclaim deed to whatever possible interest he might have in and to said land, and said deed is here presented to the court for approval; that said settlement and compromise appears to be a fair and reasonable one. considering the facts as set forth in said petition and as found herein, and it appears to the best interest of said petitioner that his said deed be approved. Wherefore it is by the court considered, adjudged, and decreed that the said quitclaim deed executed by the said Cowokochee to the said James A.

Chapman to all his interest in the southwest quarter of Sec. 27, Tp. 18 north, range 7 east, dated the 20th day of January, 1913, be, and the same is hereby, in all things ratified, confirmed, and approved.

"A. S. Norvell, County Judge."

Cowokochee testified that he was 60 years old; that he lived at Sasakwa; that his parents were Creeks; that he was an adopted Seminole, duly enrolled as such; that Albert and John Wildcat were his sons by a former wife, who was a Creek, and Watty Wildcat was his son by his second wife; that both wives and Albert and John were dead; that Albert died first, leaving him surviving Cowokochee and John, and that thereafter, in 1910, John died, leaving him surviving Cowokochee and plaintiffs, his widow and children; that Albert died in 1905, leaving as his allotment the land in controversy; that on January 20, 1913, he accompanied Turner and a interpreter to the court of Judge Norvell, in Wewoka, where the deed was approved, but no one told him anything about what the deed contained; that the judge asked him if he was satisfied with the deed, but later said he could not understand anything the judge said; that no one told him what the paper amounted to; that he thought it was a contract; that Turner told him it was; that it was a contract to bring suit for his interest in the Albert Wildcat land, Turner agreeing to furnish the costs; that he did not know Chapman; that he never sold him the land; that no one ever said anything to him about buying the land for Chapman; that he did not know that the instrument approved was a deed; that the next morning $150 was paid him by Turner, his attorney; that Turner kept the other $150; that he never said anything about what it was for; that he did not ask the interpreter to interpret for him upon that occasion and paid him nothing therefor; that he knew nothing of what became of the deed; that not long after he learned it was a deed to Chapman; that no one explained to him what it was at the time it was approved; that, had he known it to have been a deed, he would not have signed it or had it approved; that he never required its approval; that he did not know what transpired before Judge Norvell; that he took the $150 from Turner because the interpreter told him to; that he asked the interpreter not a word at the time; that he did not know what the money was for.

For Cowokochee there was also introduced in evidence a certified copy of an order of the probate court of Seminole county setting aside the nunc pro tunc order of October 7, 1913, and a certified copy of another order of that court refusing thereafter to enter an order nunc pro tunc to amend the court's order of October 7, 1912, so as to show the judgment of the court to be that Cowokochee took no part of the allotment of Albert Wildcat; but nowhere in the evidence does there appear the order of October 7, 1912, relied on by Cowokochee as showing him to be entitled to one-half thereof, and which, he claims, he is at least entitled to recover in this suit. It is admitted that there were three producing wells on the allotment.

It is unnecessary to recite the remainder of the evidence adduced upon the hearing of and in opposition to this application. Of it, it is sufficient to say the same was offered by plaintiffs, and was leveled at the validity of the warranty deed of John Wildcat, as the sole heir of Albert, dated April 28, 1906, purporting to convey the land to H. B. Gooch, and the quitclaim deed of Gooch and wife, dated October 12, 1907, to Chapman and McFarlin; also, at the invalidity of the warranty deed dated January 28, 1907, from John Wildcat and wife to J. Coody Johnson, and the quitclaim deed dated December 21, 1908, from him to Chapman. This, it seems, was for the purpose of showing that those deeds were void, and that John Wildcat had not parted with his interest in the land during his lifetime, and hence the same was inherited by plaintiffs on descent cast by him. It did not tend to prove that Cowokochee had a probable right or interest in the land.

Upon this showing the judge overruled the application, and refused to appoint a receiver, and so adjudged and decreed; to reverse which Cowokochee brings the case here, where it is numbered 5979. If we catch the contention of counsel for Cowokochee, it is that as Albert Wildcat, an enrolled Creek citizen of the half blood, died sole and intestate in 1905 seised of the allotment in question, without mother or issue him surviving, leaving him surviving Cowokochee, his father, a full-blood Creek, but enrolled as a Seminole, and John Wildcat, a brother, an enrolled Creek citizen of the half blood, and Watty Wildcat, a half-brother, a citizen of the Seminole Nation and enrolled as such, he, Cowokochee, as a Creek descendant of Albert, was entitled to inherit one-half of the allotment in his own right, and his son John the other in right of representation of his mother, who was a Creek, under the provisions of chapter 49 of Mansfield's Digest of the Statutes of Arkansas, directed to apply by section 6 of the Supplemental

Creek Agreement (Act Cong. approved June 30, 1902), which said section reads:

"The provisions of the act of Congress approved March 1, 1901 (31 Stat. L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed, and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in Indian Territory: Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation: And provided further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49." 32 Stat. 500, c. 1323.

As said chapter 49 provides that on the death of a person intestate, unmarried and leaving no children, the estate, if it came from the father, shall go to the father, and if from the mother, it shall go to the mother, but if the estate be a new acquisition, it shall ascend to the father for his lifetime, and then descend in remainder to the collateral kindred of the intestate, it is clear, on descent cast by Albert Wildcat, intestate and unmarried, without mother or children or their descendants, that, as his allotment was not a new acquisition (Pigeon v. Buck, 38 Okla. 101, 131 Pac. 1083), but was an ancestral estate which came to him by the blood of both tribal parents, that Cowokochee, as a Creek descendant of Albert, was entitled to inherit one-half thereof in his own right, and John the other by right of representation of his mother, and the court should have so held. This point is ruled by Pigeon v. Buck, supra, and Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615; Roberts v. Underwood, 38 Okla. 376, 132 Pac. 673; and Thorn v. Cone et al., 47 Okla. 781, 150 Pac. 701. In the former case, where descent was cast by a citizen of the Creek Nation in 1905, seized of an allotment, the question was whether the brothers and sisters or the father and mother were entitled to the allotment, all being citizens of the Creek Nation. The governing statute was as here, construing which, after holding that the allotment was not a new acquisition, the court held that, as the land came to the allottee by the blood of both tribal parents, the father and mother took the fee to the exclusion of the brothers and sisters. In the Shulthis Case the facts were that Andrew J Berryhill, son of George Franklin Berryhill, a citizen of the Creek Nation, and Clementine Berryhill, his wife, a noncitizen of the tribe, died seised of an allotment. Again the governing statute was as here; constru-

ing which the court, after holding that the land was now a new acquisition, but came to the allottee by the blood of his tribal parent, held that the father was entitled to inherit the land in fee as the sole heir of the allottee, he having died when only a few months old, leaving no brothers or sisters surviving him. In the Underwood Case the land was allotted to a full-blood Chickasaw Indian, who thereafter died intestate in 1907, leaving no descendants nor father nor mother. The contest over his allotment was between two paternal relatives and one maternal relative concerning their respective interests in the land. The governing statute was the same as here, and there we held the estate to be ancestral, and that one-half passed to the paternal relatives and the other to the maternal. Or, in other words, that the land would have passed to the parents of the allottee, if living, and, being dead, passed to their respective relatives in equal moieties by right of representation. This holding was followed in the Thorn Case.

From which we learn that, as the land in question came to Albert by the blood of both tribal parents, the same, on descent cast by him, went to them both in equal shares, if living, or, if dead, to their next of kin under the statute, and that Cowokochee, the father, and John, the brother, inherited the land in equal shares. And the court should have so held; that is, if Cowokochee was qualified to inherit the land as a Creek descendant of Albert under the first proviso of section 6, supra, which provides "that only citizens of the Creek Nation, male and female, and their Creek descendants, shall inherit the land of the Creek Nation." And such he was for the reason that it is not only alleged, but the uncontroverted facts disclose him to be, although enrolled as a Seminole, of Creek parentage, and hence a Creek descendant of Albert, and hence qualified to inherit his allotment.

In Lamb v. Baker, 27 Okla. 739, 117 Pac. 189, the governing statute was as here, and the question was who took the allotment of Yama Buffalo, a citizen of the Creek Nation, who died intestate in January, 1903, after the land had been allotted to her. On the one hand it was contended it went to her cousin, a citizen of the Creek Nation. On the other hand, it was contended it went to her nieces, who were of Creek blood, because, it was urged, they were her Creek descendants. And such the court held them to be, and entitled to inherit the allotment under the first proviso, which limits the inheritance to citizens of the Creek Nation and their Creek descendants.

In Hughes Land Co. et al. v. Bailey et al., 30 Okla. 194, 120 Pac. 290, the governing statute was also as here, and the question who took the allotment of Charley McNac, a Creek citizen who, in 1904, died intestate seised thereof, leaving him surviving two daughters, whose mother was a Seminole and they half-blood Creeks, but not enrolled as such, but as members of the Seminole Nation, and a half-brother, an enrolled citizen of the Creek Nation. It was urged the land went to the half-brother, because he was a citizen of the Creek Nation. But the court held not so, and following Lamb v. Baker, supra, that it went to the two daughters on the ground they were Creek descendants of their father within the contemplation of the first proviso to section 6. In passing, the court said:

"So, having determined that the second proviso does not constitute a limitation upon the first, but was intended only to provide for a line of descent when no heirs of the classes named in the first proviso exist, and it being admitted that the defendants in error are the daughters of the deceased allottee, they are in law his descendants, and, by virtue of his citizenship in the Creek Nation, are Creek descendants, though enrolled as citizens of the Seminole Nation, the word 'Creek' having reference to the blood of the father and not the tribal enrollment of the descendants."

This being true, standing alone, the court should have appointed a receiver at the instance of Cowokochee, for the reason that his right to a joint ownership in the land appeared, so far, probable. In order to justify the appointment of a receiver, Rev. Laws 1910, § 4979, provides:

"A receiver may be appointed by the Supreme Court, the district or superior court, or any judge of either, or, in the absence of said judges from the county, by the county judge:

"First. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured. * * *"

Governed by which, in Willard Oil Co. v. Riley et al., 29 Okla. 19, 115 Pac. 1103, quoting approvingly from High on Receivers, § 7, we said:

"The appointment of a receiver pendente lite, like the granting of an interlocutory injunction, is to a considerable extent a matter resting in the discretion of the court to which the application is made, to be governed by a consideration of the entire circumstances of the case. And, since the appointment of a receiver is thus a discretionary measure, the action of the lower court in appointing or denying a receiver pendente lite will not be disturbed upon appeal unless there has been a clear abuse."

And in the syllabus:

"Where, from a consideration of the claims made by the parties on an application for appointment of a receiver pendente lite, the same is made, and on appeal plaintiff's interest in the property or fund appearing probable, and no abuse of discretion is shown, and there being evidence and circumstances reasonably tending to sustain the order, the same will not be disturbed."

But let the interest of Cowokochee in the land on descent cast by Albert be as it may. Assuming that Cowokochee at that time was entitled to the most he claims, when it was shown, on the application to appoint a receiver, that he had, on January 20, 1913, executed a quitclaim deed thereto, without a scintilla of fraud or duress, and received therefor the $300 consideration named in the deed, and on his own petition and with full knowledge of what he did (as found, in effect, by the trial court) had the deed approved by formal order of the county court, such showing was sufficient to lead the court to believe that he had probably parted with all his interest in the land to Chapman, the grantee in the deed, and hence it cannot be said the judge abused his discretion in refusing to appoint a receiver.

To set aside this deed for fraud in its procurement, as alleged, it takes more than the statement of Cowokochee that he, in effect, understood nothing that took place during the entire transaction, or that, if he did, he thought the deed approved was a contract and mistook entirely the nature of its contents. This for the reason the evidence, on the other hand, discloses that the nature of the transaction was explained to him through an interpreter in open court in the presence of the judge, whose duty it was so to do and who will be presumed to have done his duty. When such is the state of the record, the validity of the deed assailed will be upheld on the ground that the evidence fails to preponderate against the deed assailed and repel all opposing presumptions in favor of the deed. This was, in effect, the holding of the trial court, and the court was right. Adams et al. v. Porter et al., 58 Okla. 225, 158 Pac. 899. We are therefore of opinion that the judge did right in refusing to appoint a receiver at the instance of Cowokochee.

Then went the defendant Chapman and the plaintiffs, the widow and children of John Wildcat, and by petition filed in the county court of Seminole county, October 6, 1913, invoked the jurisdiction of that court to render and enter a judgment nunc pro tunc correcting the final order of distribution in the estate of Albert Wildcat, dated October 7, 1912, so as to show that John Wildcat took the whole allotment in question to the exclusion of Cowokochee. But this the court, after Cowokochee had been heard, refused to do; whereupon petitioner appealed to the district court, where, on January 15, 1914, the cause was reversed, with directions to enter the order; to reverse which Cowokochee brings that case here, where it is numbered 6055, and ordered consolidated with this case. Of the errors assigned in that case we shall speak later.

Thereafter, with full knowledge of its effect and for $600 cash in hand paid by Chapman and McFarlin, but without payment of costs, or the knowledge or consent of his counsel, Cowokochee filed with the clerk of the court an instrument in writing which reads:

"Comes now Cowokochee, one of the defendants herein, and dismisses his cross-petition against defendants James A. Chapman and R. M. McFarlin and McMann Oil Company, with prejudice.

"This the 8th day of April, 1914.

                                           his
"[Signed]              Cowokochee   X
                                          mark

"I hereby certify that I signed the name of said Cowokochee to the above and foregoing dismissal in his presence and at his request, after which he made his own mark.
                           "U. G. Foreman.
"Additional witnesses: Martin Goot, Mary Tiger."

And executed the following affidavit:

"Cowokochee, being duly sworn, upon oath states that he is a citizen of the Seminole Nation; that he is over sixty years of age; that his postoffice address is Sasakwa, Oklahoma; that he is one of the defendants in case No. 3039, pending in district court, Creek county, Oklahoma; that he desires to dismiss his cross-petition in said action for the reason that on January 20, 1913, he executed a quitclaim deed in favor of defendant James A. Chapman, which deed was approved by the county judge of Seminole county, Oklahoma; that at the time he executed said deed he fully understood same, and understood that whatever rights, if any, he had in the estate of Albert Wildcat, he conveyed by said deed; that he received for said quitclaim deed the sum of three hundred dollars, and that he paid his attorney, John E. Turner, the sum of one hundred and fifty dollars.

"Affiant further states that he does not further want to prosecute said suit, because when he signed said deed and got the money that he agreed to take for same he understood fully the transaction, and does not want to repudiate same; that he would not have filed said cross-petition herein had he been fully advised as to the nature and contents thereof, and that he is now and has at all times been satisfied with the trade he made, whereby he conveyed by quitclaim deed all his interest in the allotment of Albert Wildcat, deceased, to James A. Chapman.                                   his
             Cowokochee   X
                                          mark

"I hereby certify that I signed the name of said Cowokochee to the above and foregoing affidavit in his presence and at his request, after which he made his own mark.
                           "U. G. Foreman.
"Additional witnesses: Martin Goot, Harry Tiger.

"Subscribed and sworn to before me this 8th day of April, 1914.

"[Seal.]        I. S. White, Notary Public.

"My commission expires March 3d, 1917."

Whereupon, on April 18, 1914, a journal entry of dismissal was duly filed and entered. On June 25, 1914, came Cowokochee by his attorney, and moved the court to set aside, for fraud in its procurement, the order of dismissal and reinstate the case, and, after response thereto filed, on September 10, 1914, the cause coming on to be heard upon the merits, by verified application, in which he asks to have considered as a part thereof an unverified application filed May 2, 1914, he also moved the court to continue the cause (1) for certain reasons set forth in said unverified application not necessary to mention; (2) because the motion to reinstate was pending; and (3) because case number 6055 was pending in this court. And when the court, after hearing evidence on the motion to reinstate, at the same time overruled both motions, and held that his written dismissal automatically dismissed the case as to him, and rendered and entered judgment that he "is no longer a party to this proceeding, and has no right, title, or interest in and to the lands" in controversy, Cowokochee brings the case here by separate appeal (which is numbered 6847), and for reversal assigns that the court erred in refusing to reinstate his case and in overruling his motion for a continuance.

The court did right in overruling the motion to reinstate for the reason that, as no part of the costs were paid by Cowokochee at the time he filed his written dismissal, the cause remained still pending, and hence

could not be reinstated upon motion. Rev. Laws 1910, § 5126, provides:

"A plaintiff may, at any time before the trial is commenced, on payment of the costs and without any order of court, dismiss his action after the filing of a petition of intervention or answer praying for affirmative relief, but such dismissal shall not prejudice the right of the intervener or defendant to proceed with the action. Any defendant or intervener may, in like manner, dismiss his action against the plaintiff, without an order of court, at any time before the trial is begun, on payment of the costs made on the claim filed by him. * * * Such dismissal shall be in writing and signed by the party or his attorney, and shall be filed with the clerk of the district court, * * * where the action is pending, who shall note the fact on the proper record: Provided, such dismissal shall be held to be without prejudice, unless the words 'with prejudice' be expressed therein."

Construing this statute, in Harjo et al. v. Black et al., 49 Okla. 566, 153 Pac. 1137, we said:

"The statute was intended to furnish an expeditious means whereby a civil action could be voluntarily dismissed by the plaintiff at any time before the filing of a petition of intervention or answer seeking affirmative relief against plaintiff was filed, and without the necessity of obtaining an order of court directing such dismissal. But the filing of the stipulation by plaintiff is not all, for the statute requires that the costs be paid. We have already seen that, although the stipulation was filed on June 10th, the costs were not paid until July 5th, and were not then paid by the plaintiffs, but by defendants. It cannot be said, therefore, that the mere filing of the stipulation automatically dismissed the suit. Until the costs were paid it remained upon the court docket, as though the stipulation had not been filed. The court was not divested of jurisdiction over the action until a compliance with the statute."

We say the court did right in overruling the motion to reinstate, and that, too, although the judgment entry shows the court to have been of the erroneous opinion that the filing of the dismissal automatically operated as a dismissal of his cross-action by Cowokochee without his payment of costs. This for the reason that we cannot reverse the court where he gave a wrong reason for a right ruling. Hodgins v. Hodgins, 23 Okla. 625, 103 Pac. 711.

Neither did the court err in overruling the motion for a continuance. This for the reason that the motion was addressed to the discretion of the court, and it is not claimed the court abused its discretion. Besides, if the application was made on account of the absence of evidence, as it fails to show the materiality thereof, the same was properly overruled. And we cannot see how, if Cowokochee should win in cause No. 6055 in this court, and we should accordingly hold that the district court erred in reversing the county court, and that the order of that court dated October 7, 1912, should remain unamended nunc pro tunc and so as to show Cowokochee to be entitled to one-half the land, assuming that the judgment of that court to that effect was admissible in evidence here to prove that fact, still we cannot see of what material benefit that would be to Cowokochee since, by the quitclaim deed of January 20, 1913, duly approved by the county court, it seems, from the present state of the record, that he has since parted with his interest therein to Chapman, as pleaded. And, looking at it in the large, it is rather a novel proposition to say the court erred in refusing to continue one cause in order to await the termination of another cause, in which the applicant was a party and hoped to prevail, so as to give the applicant an opportunity to thereby secure evidence with which to bolster up the cause sought to be continued. And, in passing, it might be well to say that we will not consider any of the assignments of error in case No 6055, for the reason that, as that case was an independent proceeding in another court, no part of which has found its way into this cause, no order made therein is such an intermediate order involving the merits of this cause as we are authorized in this cause to reverse, vacate, or modify under the provisions of the statute. Rev. Laws 1910, § 5236.

But it does not follow that, because the court did right in overruling Cowokochee's motion for a continuance, he was also right in rendering and entering judgment that Cowokochee, in effect, be eliminated from the case, and that he had no right, title, or interest in the land. Rather was it the duty of the court not to render, as he did in effect, final judgment against Cowokochee, but, when the cause was reached on its merits, to afford him an opportunity to go to trial upon the merits of his cross-petition and the issues joined thereon. This the court did not do, and this was such error as requires a reversal of this cause as to Cowokochee, so as to give him his day in court.

On September 11, 1914, the cause came on for trial to a jury upon its merits and upon the issues joined between plaintiffs and defendants Chapman and McFarlin only, and upon their cross-petition, and not upon the merits of the cross-petition of Cowokochee.

There was a verdict for defendants, in effect, that John had parted with his interest in the land before he died; whereupon the court rendered and entered judgment that plaintiffs take nothing by their suit, and that Chapman and McFarlin were the owners of and entitled to retain possession of the land in virtue of the deeds assailed, purporting to convey the land to them from John. And, granting the prayer of their cross-petition, the court further adjudged and decreed that their title to the land be quieted, and that plaintiffs be enjoined from incumbering the title, and that the Swift leases be canceled; to reverse which plaintiffs bring the case here by separate appeal (which is numbered 7720).

On the trial, it being in effect conceded, but not by Cowokochee, who took no part herein, that Albert Wildcat was an enrolled Creek citizen of the half blood; that he died intestate in 1905, seized of the allotment in question, without wife or issue, leaving him surviving Cowokochee, his father, a full-blood Creek, enrolled as a Seminole, and John Wildcat, a brother, an enrolled Creek citizen of the half-blood, and Watty Wildcat, a half-brother, a citizen of the Seminole Nation—the court was of opinion that John Wildcat inherited the land in fee, to the exclusion of Cowokochee; that the same, on descent cast by John, went to the plaintiffs, his widow and children, and that they were entitled to the possession of the land, unless John had parted with his title thereto to defendants Chapman and McFarlin before he died. While the court erred, as we have seen, in holding that John inherited the land in fee to the exclusion of Cowokochee, the same was harmless, since, upon examination, we find there is no error in the verdict and judgment, in effect, that John had parted with his title to the land before he died. To maintain the issues on their part, and to show that John had not parted with his interest in the land before he died, plaintiffs offered to prove by parol that John Wildcat, although the evidence discloses him to be enrolled as of the half blood, was in fact a full-blood Creek. This was offered in order, if proved, to show that his warranty deed dated March 31, 1906, purporting to convey the land as the sole heir of Albert Wildcat to Chapman, and his deed dated April 28, 1906, to Gooch, and his warranty deed dated January 28, 1907, purporting to convey the land to J. Coody Johnson, were void because not approved by the Secretary of the Interior, which was excluded, and this is plaintiffs' first assignment of error. But, since defendants disclaimed all interest in virtue of the deed of March 31, 1906, of that

we need not speak in this connection. Of the deed of April 28, 1906, it is sufficient to say that, as John was an adult of less than full blood, he at that time was not subject to the restrictions against alienation, but had a right to sell his interest in the land in controversy without the approval of the Secretary of the Interior, and his quantum of Indian blood could only be determined by the rolls, and could not be collaterally attacked by parol, as attempted.

Section 22 of an act approved April 26, 1906 (34 Stat. L. 137, c. 1876), provides:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent. * * *"

And section 19:

"* * * And for all purposes the quantum of Indian blood possessed by any member of said tribes shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior. * * *"

The Indian Appropriation Act of June 21, 1906 (34 Stat. 325, c. 3504), among other things, provides:

"That the Secretary of the Interior shall, upon completion of the approved rolls, have prepared and printed in a permanent record book such rolls of the Five Civilized Tribes and that one copy of such record book shall be deposited in the office of the recorder in each of the recording districts for public inspection. * * *"

Concerning this same contention, in United States v. Ferguson et al., 225 Fed. 974, 141 C. C. A. 96, the Circuit Court of Appeals for this circuit, in a case where, as here, a deed executed subsequent to the approval of the act of April 26, 1906, was assailed, said:

"At the trial appellant offered to show by the testimony of three witnesses, to wit, Jacob Harrison, Concharty, and Catcha Holatka, that the mother of Marche Yekcha was a full-blood Seminole Indian. The trial court ruled that the Seminole Roll of Indians by blood was conclusive upon the question as to the quantum of Indian blood possessed by Marche Yekcha, and that as the act of Congress of April 26, 1906, contained no restrictions as to mixed-blood Indians, decided that the appellant could not maintain the action and dismissed the bill. It thus appears that the only question for decision is as to whether the Roll of Seminole Indians by blood, as prepared by law, is conclusive against collateral attack."

And, after construing the sections of said acts, supra, together with section 3 of the

Act of May 27, 1908 (35 Stat. 312, c. 199), which reads:

"That the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes. * * *"

—said:

"This court, in Malone v. Alderdice, 212 Fed. 668, 129 C. C. A. 204, and in Nunn v. Hazelrigg, 216 Fed. 330, 132 C. C. A. 474, decided that: 'The commission to the Five Civilized Tribes, which made the enrollment of their citizens and freedmen, was a quasi judicial tribunal, empowered to determine who should be enrolled and what land should be allotted, and in what way it should be allotted to every citizen and freedman, and its adjudication of these questions, and of every issue of law and fact that it was necessary for it to determine in order to decide these questions, is conclusive and impervious to collateral attack.' The Circuit Court for the Eastern District of Oklahoma in the case of Bell v. Cook, 192 Fed. 597, decided the question in the same way. To the same effect is Yarbrough v. Spalding, 31 Okla. 806, 123 Pac. 843; Lawless v. Raddis, 36 Okla. 616, 129 Pac. 711. It results that the ruling of the trial court in excluding evidence offered for the purpose of showing that the mother of Marche Yekcha was a full blood was correct, and the judgment below is affirmed."

See, also, Campbell v. McSpadden, 44 Okla. 138, 143 Pac. 1138.

We are therefore of opinion that the evidence was properly excluded, and that the deed of April 28, 1906, conveyed John's interest in the land to Gooch, as found by the jury, although not approved by the Secretary of the Interior; that is, unless the court erred in fairly submitting the issues to the jury assailing it on other grounds. Otherwise assailing the deed, it was the theory of plaintiffs that the deed dated March 31, 1906, from John to Chapman, because executed before the removal of restrictions, was void as in fraud of an act of Congress approved April 26, 1906 (34 Stat. 137, c. 1876), which reads:

"And every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby, declared void."

And the court should have so instructed the jury, and at the same time left it to them to say whether for the making of the deed of April 26, 1906, a contract or agreement was entered into between the parties to the first deed; or, in other words, whether the deeds were part of one and the same transaction, or whether the second was taken pursuant to the illegal contract of sale evidenced by the first deed, and, if so, to further instruct them that both deeds were void; and that the court erred in refusing so to do.

Not so, for the reason the evidence is insufficient to support the charge, in that it does not reasonably tend to prove facts sufficient to justify an inference that both deeds were executed in violation of the statute. On this point the most that can be said of the evidence is that the deed of March 31, 1906, was void as in fraud of the statute, but, reciting, as it does, a consideration of $800, we presume it was paid, since the same is not questioned; that, failing to secure the title by means of said deed, Chapman, after John's restrictions were removed, sent his agent from Holdenville, bearing to him, while in jail at Muskogee, the deed of April 28th to execute, conveying the same land to one Gooch, and that the agent spoke to John through an interpreter, whereupon John, with full knowledge of the effect of his act, and without duress of any kind or further consideration, executed the deed after which Gooch, an officer with Chapman in the Planters' Trust Company, relinquished his title to the land by quitclaim deed dated October 12, 1907, to the defendants Chapman and McFarlin. What though the deed was void and tainted with illegality, as taken in fraud of the statute? There is no evidence, other than that bearing upon that transaction, and, standing alone, proved only that the transaction of securing the title to the land ended with the execution and delivery thereof and the payment of the purchase money named in the deed. Such being true, there was no evidence to go to the jury from which they could reasonably find that both deeds were part of one and the same transaction, and that the taint of illegality in the one tainted the other, and hence that both were void. What though the second deed was executed two days after the removal of restrictions, and without further consideration? As the grantor therein had at that time a perfect right to sell or give his land away, or make good any supposed moral obligation in consideration of the purchase money already paid, from such it could not reasonably be inferred that for the making of the second deed a contract or agreement was entered into between the parties to the first deed, or that the deeds were part of one and the same transaction, or that the second deed was taken pursuant to the illegal contract of sale evidenced by the first deed, and hence the court did not err in refusing to instruct as requested. And this, too, although there

was no present payment of a consideration for the second deed. This for the reason that a deed is good as between the parties without a consideration. 13 Cyc. 532.

Concerning the further testimony assailing the validity of the deed of John Wildcat and wife, dated January 28, 1907, purporting to convey the land to J. Coody Johnson, and the quitclaim deed from him to Chapman dated December 21, 1906, and the exceptions taken to the evidence in support thereof, and to the instructions of the court to the jury on the issues joined on their validity, we need not speak, for the reason that the jury having found, after being correctly instructed, on the issues joined as to the validity of the deed of April 28, 1906, that said deed was good and passed the title from John Wildcat to defendants, a finding by us that the court erred in the trial of said issues, in any of the particulars assigned, would not work a reversal of the case, but such error would be harmless.

It is unnecessary for us to speak concerning the other deeds set forth in the petition; that is, the deed from a certain other person of the name of Albert Wildcat purporting, after the death of the allottee, Albert Wildcat, to convey the land by warranty deed, dated January 11, 1908, to Cecil Taylor, and from him to J. Garfield Buell, and from him to Chapman. Nor of the deed of Watty Wildcat, dated March 18, 1906, purporting to convey the land to Chapman; or his deed of a later date, purporting to quitclaim the land to Chapman. This for the reason that the court, without objection, instructed the latter two out of the case, and the former deeds were not otherwise mentioned than in the pleadings.

Being of opinion that the jury did right in finding that John Wildcat, before his death, thus parted with his interest in the land to defendants, who are still the owners and entitled to retain possession thereof, and that by their leases the plaintiff Swift took nothing, the judgment of the trial court is affirmed as between plaintiffs and defendants Chapman and McFarlin, but reversed as to Cowokochee, not for a new trial upon his application for the appointment of a receiver, but for a trial upon the merits of the issues joined upon the allegations that his deed of January 20, 1913, purporting to convey his interest in the land to Chapman, is void for fraud in its procurement, and that the nunc pro tunc order of the county court of Seminole county, dated October 7, 1913, in effect that Cowokochee took no interest in the allotment of Albert, is void, and all other is-

sues thus joined upon which he relies to show that he had not parted with his interest in the premises in controversy, and is entitled to have his title thereto adjudicated and quieted in him.

Let the costs of this appeal be equally divided between plaintiffs Cowokochee and Chapman and McFarlin.

All the Justices concur, except MILEY J., disqualified and not participating.