## ARMSTRONG v. WOOD et al.

### (Circuit Court, E. D. Oklahoma. September 25, 1911.)

### No. 1,100.

**1. INDIANS (§ 18*)—LANDS—DESCENT OF LANDS OF DECEASED ALLOTTEE—CONSTRUCTION OF CREEK AGREEMENT.**

In section 6 of the supplemental Creek agreement (Act June 30, 1902, c. 1323, 32 Stat. 501), which provides that the descent and distribution of land and money provided for by Act March 3, 1901, c. 676, 31 Stat. 861, shall be in accordance with sections 2522-2545, Mansf. Dig. (sections 1820-1843 Ind. T. Ann. St. 1899), then in force in the Indian Territory, instead of in accordance with the laws of the Creek Nation as provided in such act, "provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation," the proviso was intended to apply only to unallotted lands, which alone were "lands of the Creek Nation," and to govern the descent or distribution of such lands among the heirs of members of the tribe entitled to share therein, but who died without having received their allotments, and does not apply to lands of an allottee who died after receiving his

or her allotment which pass by inheritance as the individual property of the allottee under the provisions of said Arkansas statute.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 49; Dec. Dig. § 18.*]

2. CURTESY (§ 1*)—NATURE OF ESTATE.

Curtesy is the estate to which by common law a man is entitled on the death of his wife in the lands or tenements of which she was seised in possession in fee simple or in tail during their coverture, provided they had lawful issue born alive which might have been capable of inheriting the estate, and it attaches to the wife's equitable as well as her legal estates of inheritance.

[Ed. Note.—For other cases, see Curtesy, Cent. §§ 1, 2; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 2, pp. 1796, 1797; vol. 8, p. 7625.]

3. INDIANS (§ 18*)—LANDS OF DECEASED WOMAN ALLOTTEE—ESTATE BY THE CURTESY.

By Act May 2, 1890, c. 182, § 31, 26 Stat. 94, sections 566, 567, Mansf. Dig. (sections 465q, 465r, Ind. T. Ann. St. 1899), was extended over Indian Territory with a proviso excepting Indians and their estates. By act June 7, 1897. c. 3, § 1, 30 Stat. 83, such laws were made to apply to all persons in the territory "irrespective of race" and by the Curtis Act June 28, 1898, c. 517, § 26, 30 Stat. 504, it was provided that the laws of the Indian tribes should no longer be enforced. *Held* that, by virtue of such provisions, a noncitizen husband of a Creek allottee who died after the birth of a child of the marriage was entitled by the curtesy to a life estate in her allotted lands.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 49; Dec. Dig. § 18.*]

Action at law by Andrew Armstrong, Sr., against W. W. Wood and others. Trial to court and judgment for defendants.

S. V. O'Hare, for plaintiff.
Geo. S. Ramsey and Owen & Stone, for defendants.

CAMPBELL, District Judge. This case was heard by the court; jury having been waived. The plaintiff sues in ejectment to recover possession of the premises in controversy from the defendants now in possession. Most of the questions involved in the case were passed upon at the trial. The question of jurisdiction was determined in favor of plaintiff. The plaintiff claims under deeds from certain Creek full-blood heirs, taken subsequent to May 27, 1908, where the Creek allottee under whom they claim died prior to said date. This deed was approved by the county court of McIntosh county; the court having jurisdiction of the settlement of the estate of the deceased allottee. This is sufficient, and in such case it is not necessary that such conveyance be approved by the Secretary of the Interior. Harris v. Gale, 188 Fed. 712, lately decided by this court. But the question in the case upon which the court was not clear at the trial, and upon which at the court's request counsel have furnished additional briefs, is as to whether the husband of the deceased allottee, a noncitizen, took a life estate by curtesy in her lands. Annie McMinn, the allottee, was a full-blood citizen of the Creek Na-

tion. On August 16, 1899, under provisions of law then in force, she selected as her allotment the land in controversy. This selection was confirmed by section 6 of the Original Creek Agreement (31 Stat. 863), and became her allotment under that agreement. In May, 1900, she married Allan J. Wilson, a noncitizen of the Creek Nation, whereupon she and her said husband moved upon and took possession of the land. On March 13, 1903, a child was born alive to them, and shortly thereafter the said child and Annie McMinn, the allottee, died, before patent was issued for the land, and on August 6, 1904, patent to said land was issued to her "heirs," without specifying them by name, as was the custom in such cases. The plaintiff claims under conveyances from the deceased allottee's heirs. The defendants are in possession and claim under conveyances from the husband, Allan J. Wilson, an estate in the land during the life of said Wilson; their contention being that he had a life estate by right of curtesy. If such right existed in the said Wilson, then the defendants must recover in this action.

[1] Plaintiff contends that section 6 of the Supplemental Creek Agreement (32 Stat. 501) precludes the right of curtesy claimed, even if but for that provision the right would attach. That section reads:

"Sec. 6. The provisions of the act of Congress approved March 1, 1901, in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed, and the descent and distribution of land and money provided for by said Act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas, now in force in Indian Territory; provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation; and, provided further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the way named in said chapter 49."

In section 28 of the Original Agreement, it was provided that all citizens who were living April 1, 1899, and entitled to enrollment under the "Curtis Bill," should be enrolled, and, if any such citizen should die before receiving his allotment of land and share of the tribal funds, such land and money should descend to his heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly. In the same section it was further provided that all children born to citizens entitled to enrollment up to and including July 1, 1900, and then living, should be enrolled, and, in event of the death of such child before allotment, the land and money to which it would have been entitled if living should descend to its heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly. This was the only provision in the Original Agreement providing for inheritance of "lands of the Creek Nation"—that is, inheritance in the broad sense in which it was there used—it being provided that the land to which this section related should "descend" to the heirs, but it "descended" or was "inherited" as "lands of the Creek Nation," because it came direct from the Nation to the heirs. Other portions of the agreement provided for the inheritance of lands from deceased allottees, who had acquired their lands by allotment

before death, but such lands were inherited as the individual property of such deceased allottees, and not as lands of the Creek Nation.

The lands upon which the inhibition as to inheritance is placed are "lands of the Creek Nation." Strictly speaking, they are not lands of the Creek Nation after, under this scheme of allotment, the title passes to the individual members of the tribe, but the lands of the respective allottees, and one who inherits such lands from one of these allottees is not inheriting lands of the Creek Nation, but lands of such allottee. It is true that the taking of these allotments direct from the Nation by the heirs of deceased members who if living would be entitled to them is not strictly speaking an inheritance, but the terms "descend" and "inherit" are not used in either the Original or Supplemental Agreement in their strict technical sense when applied to these allotments, which, because of the death of the original allottee, must be made to his heirs. As said by the Circuit Court of. Appeals for this circuit in reference to the use of these technical terms in these agreements, in Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615:

"The word 'descend' is, of course, inapplicable to the actual contingency provided for by the statute, because that contingency contemplates the death of the child before he had actually become seised of any interest in the land. The word 'descend' is a word of art, and indicates the transference of property by inheritance. If any significance is to be given to it as used in this section, it must be held that the intent of the parties to the agreement was that the land should pass to the same persons and in the same proportions as it would have passed if the child had died seised of it. Any other construction simply obliterates this word, and makes the land pass to the parties who are heirs directly by allotment from the tribe. The statute itself not only declares that it shall 'descend,' but also declares that it shall be 'allotted and distributed' to the heirs. It is manifest, therefore, that both ideas were in the minds of the parties to the agreement."

But, as appears from the Compiled Laws of the Creek Nation 1880, it was a provision of the Creek law that:

"All noncitizens not previously adopted and being married to citizens of the nation, or having children entitled to citizenship, shall have a right to live in this nation and enjoy all the provileges enjoyed by other citizens, except participation in the annuities and in the final participation in the lands."

It is evident that, even when this act was passed, the people of the Nation anticipated the breaking up of tribal relations and division of the land in severalty among the members, and announced the policy that noncitizens should not participate therein. But this policy of nonparticipation by noncitizens might have been thwarted but for this proviso in section 6. The living allottees were, of course, confined to enrolled members of the tribe, but where one so enrolled and entitled to allotment had died before allotment to provide that his share in the lands of the nation should descend and be allotted to his heirs according to the laws of Arkansas might in many instances, but for the proviso, have resulted in noncitizens of the Nation participating in the final division of the tribal lands. By substituting the Arkansas law for the Creek law, the above quoted section of the Creek law, which before would have prevented a noncitizen from par-

ticipating, was made inoperative, but by the proviso the same result was attained. I believe this was the purpose of the proviso, and that it does not apply to cases of inheritance from deceased allottees to whom allotments have been made during their lifetime; that such lands, after being so allotted, are not "lands of the Creek Nation" in the sense used in the proviso. It is my opinion that the proviso only applies to the distribution of those several portions of the tribal lands among the heirs of each of such members of the tribe as died prior to allotment, who, had they been living at the time of allotment, would have been entitled to the land. These heirs inherit the land in the broad and nontechnical sense in which that term is used in the agreements, and by the proviso the heirs so taking are confined to citizens and their Creek descendants, and the policy of the tribe to exclude noncitizens from participating in the division of the tribal lands is accomplished. It follows that as Annie McMinn, the original allottee involved in this case, took her allotment during her lifetime, the inhibition as to noncitizen heirs, expressed in section 6, does not apply to her lands. It is unnecessary, therefore, to determine whether the right of curtesy partakes more of the nature of title by descent than by purchase, or vice versa, upon which question the authorities seem to be at variance.

[2] Did the right of curtesy exist in Allan J. Wilson? Curtesy is the estate to which by common law a man is entitled on the death of his wife in the lands or tenements of which she was seised in possession in fee simple or in tail during their coverture, provided they had lawful issue born alive which might have been capable of inheriting the estate (12 Cyc. 1002), and it attaches to the wife's equitable as well as her legal estates of inheritance. Id. 1010.

[3] By Act Cong. May 2, 1890 (26 Stat. 81), chapter 20 of Mansfield's Digest of the Laws of Arkansas (Ind. T. Ann. St. 1899, §§ 465q, 465r) was extended over Indian Territory, by which the common law was made applicable here, but under a proviso in the act did not then apply to the Indians of Indian estates.

By Act June 7, 1897 (30 Stat. 62, 83), it was further provided:

"Provided, further, that on and after January 1st, 1898, the United States Courts in said (Indian) Territory shall have original and exclusive jurisdiction and authority to try and determine all civil causes in law and equity thereafter instituted, and all criminal causes for the punishment of any offense committed after January 1, 1898, by any person in said Territory, and the United States Commissioners in said Territory shall have and exercise the powers and jurisdiction already conferred upon them by existing laws of the United States, as respects all persons and property in said Territory, and the laws of the United States and the State of Arkansas, in force in the Territory, shall apply to all persons therein, irrespective of race, said courts exercising jurisdiction thereof as now conferred upon them in the trial of like causes."

And by section 26 of the "Curtis Bill" (30 Stat. 504) of June 28, 1898, it was further provided:

"That on and after the passage of this act the laws of the various tribes or nations of Indians shall not be enforced at law or in equity by the courts of the United States in the Indian Territory."

By the same act all the tribal courts were abolished.

Thereupon the common law as theretofore conditionally extended over Indian Territory was made applicable to all persons irrespective of race, and the estate by the curtesy attached in favor of the husband to all lands of which the wife became seised during coverture upon the arising of the conditions upon which that estate is based at common law. These conditions existed in favor of Allan J. Wilson, when said allottee died, and the defendants are therefore entitled under their conveyances from him to the possession of the land in controversy during his lifetime.

Judgment will therefore be entered for defendants