## COWOKOCHEE v. CHAPMAN et al.

No. 12840—Opinion Filed Nov. 21, 1922.

Rehearing Denied Feb. 13, 1923.

Second Rehearing Denied June 26, 1923.

(Syllabus.)

1. **Indians—Creek Lands—Descent and Distribution.**

Where an enrolled citizen of the Creek Tribe of Indians died in November, 1905, having received his allotment of land prior to death, leaving surviving him his father, who was enrolled as a full-blood Seminole Indian and was not a descendant of a Creek citizen, and a brother of the full-blood, enrolled as a Creek citizen, the devolution of such deceased allottee's land is governed by the applicable provisions of chapter 49, Mansfield's Digest of the Laws of Arkansas, as qualified by the provisos of section 6 of the Creek Supplemental Agreement, ratified July 26, 1902, 32 Stat. 500, and the father of such deceased allottee is excluded from inheriting any part of the land of such deceased allottee, and the same was inherited by the brother as the Creek heir of the deceased.

2. **Courts—County Courts—Probate Jurisdiction — Restricted Indian Lands not Subject to Administration and Distribution.**

Restricted Indian lands are not subject to the payment of the debts of the deceased allottee, and for that reason are not assets of such deceased allottee's estate subject to administration, and a decree of the county court of Seminole county entered in October, 1912, distributing such lands is not conclusive as to the heirs entitled to inherit such lands. A probate court in distributing the estate of a deceased person has no jurisdiction to distribute any estate other than the assets of the estate subject to administration, and a decree distributing estate over which the court has no jurisdiction is a nullity.

3. **Indians—Title to Lands—Affirmance of Judgment.**

Record examined, and held, that the judgment of the trial court should be affirmed.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action between Cowokochee and James A. Chapman and R. M. McFarlin, involving title to Indian land. Judgment for the latter, and the former brings error. Affirmed.

Lewis C. Lawson, for plaintiff in error.

Harry H. Rogers, John Rogers, and Gibson & Hull, for defendants in error.

KENNAMER, J. Chotkey Wildcat et al., plaintiffs, commenced this action on June 4, 1914, in the district court of Creek county against Cowokochee, James A. Chapman, and R. M. McFarlin for possession of 160 acres of land located in Creek county, Okla. The lands were allotted by Albert Wildcat as his porportionate share of the Creek lands of the Creek Nation. Albert Wildcat appeared upon the final approved rolls of the Creek Nation opposite roll No. 9195 enrolled as one-half blood member of the Creek Tribe of Indians.

Cowokochee appeared and filed answer and cross-petition in the action, alleging that he was the owner of an undivided one-half interest in the lands in controversy allotted by Albert Wildcat, and prayed the judgment of the court for an order appointing a receiver over said lands pending the litigation. Upon the presentation of the application for the appointment of a receiver the trial judge denied the same. Thereafter, upon an alleged settlement of the interest of Cowokochee, an order of dismissal was entered dismissing the cross-petition of Cowokochee. Motion thereafter was filed by Cowokochee to reinstate his cross-petition. The cause was tried and resulted in a judgment in favor of the defendants.

Chapman and McFarlin, against the plaintiffs.

The plaintiffs, Chotkey et al., prosecuted an appeal, and Cowokochee prosecuted appeals from the order denying his application for receiver and overruling his motion to reinstate his cross-petition. These appeals were disposed of in an opinion by this court delivered by Mr. Justice Turner (Cowokochee v. Chapman, 67 Okla. 263, 171 Pac. 50). The judgment of the trial court in this opinion was affirmed, settling the controversy between the plaintiffs and the defendants, Chapman and McFarlin. The cause was remanded to the district court for the trial of the issues raised by the cross-petition of Cowokochee wherein he sought to cancel the deed executed on January 20, 1913, purporting to convey his interest in the land to Chapman, and other issues relating to the nunc pro tunc order of the county court of Seminole county wherein said county court had distributed the estate of Albert Wildcat, deceased. The cause thereafter, on April 21, 1921, was tried on the issues between Cowokochee and Chapman and McFarlin in the district court of Creek county to the court, and after the trial taken under advisement until the 10th day of October, 1921, at which time the court entered judgment decreeing that Cowokochee had not sustained the allegations of his cross-petition against the defendants, Chapman and McFarlin, and was not entitled to the relief prayed for in his cross-petition. Motion by Cowokochee was filed for a new trial. The motion for new trial was overruled by the trial court and this appeal is prosecuted by Cowokochee, as plaintiff in error, against James A. Chapman and R. M. McFarlin, defendants in error, to reverse the judgment of the trial court.

Upon an examination of the record in this cause we are of the opinion that there are two legal questions decisive of this appeal: (1) Did Cowokochee inherit as an heir-at-law any part of the allotment of Albert Wildcat deceased? (2) Did the county court of Seminole county, Okla., having jurisdiction of the settlement of the estate of Albert Wildcat, deceased, by its decree of distribution, distributing the lands in controversy, one-half to John Wildcat, and one-half to Cowokochee, October 7, 1912, conclusively establish the heirship to said lands?

The following material facts, as disclosed by the record, must be considered in determining the two legal questions presented:

Albert Wildcat, a Creek citizen of the half-blood, selected the land in controversy as his allotment, and a patent therefor was issued on the 11th day of March, 1903, and was approved by the Secretary of the Interior April 3, 1908. The allottee, Albert Wildcat, died intestate in the month of November, 1905, while a citizen of what is now Seminole county, Okla. He left surviving him John Wildcat, a full brother, a citizen of the Creek Nation of the half-blood, enrolled opposite roll No. 9194; Watty Wildcat, a half-brother, a citizen of the Seminole Nation of the full-blood, enrolled opposite roll No. 600; Cowokochee, his father, enrolled as a citizen of the Seminole Nation of the full-blood opposite roll No. 598.

The mother of Albert Wildcat had died prior to his death. The mother of Albert was a Creek citizen. It is clear from the record that John Wildcat and his brother Albert received their Creek citizenship through the blood of their mother. Mapetha, the mother of John and Albert Wildcat, was a member of the Artusse tribal town of the Creek Nation, and it was by reason of the Creek citizenship of the mother of Albert and John that they were enrolled as Creek citizens. It appears that Cowokochee, the father of Albert and John Wildcat, was enrolled as a full-blood Seminole citizen, and that his father, Cho-fix-i-co-chee, and his mother, Sigey, were not members of any Creek Tribe, but were members of the Gaha Harjo Band of the Seminole Tribe of Indians.

Albert Wildcat having died in 1905, prior to the admission of Oklahoma into the Union as a state, the devolution of his estate is governed by the applicable provisions of chapter 49 of Mansfield's Digest of the Statutes of Arkansas, as qualified by the Creek Supplemental Treaty approved June 30, 1902 (32 Stat. 500). Section 6 of said act provides:

"The provisions of the act of Congress approved March 1, 1901 (31 Stat. L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation are hereby repealed, and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in the Indian Territory: Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation. And provided, further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49."

Section 2531, c. 49, of Mansfield's Digest of the Laws of Arkansas, reads:

."In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father of his lifetime and then descend in remainder to the collateral kindred of the intestate in the manner provided in this act; and, in default of a father, then to the mother for her lifetime; then to descend to the collateral heirs as before provided."

It is well settled in this class of cases that such land in question is an ancestral estate. Shulthis v. McDougal, 120 Fed. 529; McDougal v. McKay et al., 43 Okla. 261, 147 Pac. 987, 59 L. Ed. 1001; Gillum v. Anglin, 44 Okla. 684, 145 Pac. 1145; Lovett v. Jeter et al., 44 Okla. 511, 145 Pac. 334; Washington v. Miller, 34 Okla. 259, 129 Pac. 58, 235 U. S. 442; Bruner v. Oswald, 72 Oklahoma, 178 Pac. 693; Ross v. Wertz, 70 Oklahoma, 172 Pac. 968; Stalcup v. Mullen, 49 Okla. 543, 153 Pac. 868; Maroney v. Tannehill, 90 Okla. 224, 215 Pac. 938.

Under the first proviso to section 6 of the Creek Supplemental Treaty, supra, only two classes are permitted to inherit lands of the Creek Nation, if there be such heirs, Creek citizens and descendants of Creek citizens. In the first section of the Treaty the word "citizen" or "citizens" was defined to mean, "should be deemed to refer to a member or members of the Muskogee Tribe or Nation of Indians." See Minshall v. Berryhill, 83 Okla. 100, 205 Pac. 937. So we conclude that Cowokochee is precluded from inheriting under the first class as a Creek citizen, being enrolled as a Seminole citizen. It is also clear that, his parents not being members of any of the Creek Tribe of Indians upon any of the old tribal rolls of such town or tribe, he cannot inherit as a descendant of Creek citizens. A descendant is the offspring, however remote. It is the opposite of ancestor.

Under the authority of Washington v. Miller, 34 Okla. 259, 129 Pac. 58, affirmed in 235 U. S. 442, it is apparent that Cowokochee, the father of Albert Wildcat, cannot inherit any part of his son's allotted land. The writer of this opinion does not agree with the reasoning in the case of Washington v. Miller in construing the "lands of the Creek Nation," as used in the treaty, to apply to allotted lands, but, as pointed out by Judge Campbell in the case of Armstrong v. Wood et al., 195 Fed. 141, the phrase "lands of the Creek Nation" only had reference to the portion of the tribal lands which would be inherited from a member of the tribe dying prior to receiving allotment. That is, the unallotted lands belonging to a member of the tribe who had died prior to selecting his allotment. It was clearly the intention of the proviso to exclude noncitizens from obtaining any portion of the unallotted tribal lands by inheritance. There is nothing in the language of the provision justifying the conclusion that "lands of the Creek Nation" had reference to the individual allotment of a citizen who had selected his lands in severalty. The construction placed upon the proviso in Washington v. Miller, supra, attributes to the Creek Indians an unnatural attitude towards their kindred and places a construction upon the language found in the proviso not in harmony with its ordinary import. The reasoning of Judge Campbell in Armstrong v. Wood, supra, appears to be unanswerable, but we are bound by the conclusion reached in Washington v. Miller, supra.

This brings us to consideration of the effect of the decree of the county court of Seminole county entered in October, 1912, distributing the lands in controversy, one-half to Cowokochee and one-half to John Wildcat. It is conceded that Chapman and McFarlin have title to the lands in controversy through a conveyance executed by John Wildcat during his lifetime as the heir of the deceased allottee, Albert Wildcat.

It is admitted by the parties to this action that the land in controversy, being the individual allotment of Albert Wildcat, enrolled as a one-half blood Creek Indian on the date of the death of the allottee, in the year 1905, was restricted Indian land. Therefore, it is clear that the land was not subject to the payment of the debts of the deceased allottee, and that the probate court never acquired jurisdiction of the land in the course of the administration proceedings as assets of the estate of the deceased. The administrator of the estate of Albert Wildcat, deceased, was never entitled to the possession of the land or the control thereof. The administrator of an estate under the statutes of Arkansas was not entitled to the possession of lands unless the same were needed to pay the intestate's debts. Chowning v. Standfield, 49 Ark. 87, 4 S. W. 276. Cook v. Franklin, 73 Ark. 23, 83 S. W. 235; 24 C. J. sec. 603. The same rule is the settled law in this jurisdiction. In the case of Barnard v. Bilby, 68 Okla. 63, 171 Pac. 444, this court in the third paragraph of the syllabus held:

"The homestead allotment of a minor Creek freedman who died April 22, 1908, is not subject to the payment of the debts of the decedent, and is therefore not assets of the decedent's estate."

The court, in deciding an attempted administrator's sale of the allotted lands of the deceased Creek citizen to be void, specifically pointed out that the county court of Wagoner county did not have jurisdiction of the subject-matter, that is, the allotted lands, for the reason that such lands of the deceased were not subject to the payment of the deceased's debts, and therefore not subject to administration. It is clear that a probate court in distributing the estate of a deceased person has no jurisdiction to distribute any other estate than the assets of the estate subject to administration, and that an attempted distribution of estate not subject to administration, over which the probate court never acquired jurisdiction by reason of the administration proceedings to that extent, is a nullity. We therefore conclude that the decree of distribution in the instant case in no way determined the rights of the legal heirs to the lands in controversy. This conclusion is quite obvious in view of the fact that under the provisos of section 6 of the Creek Supplemental Treaty of June 30, 1902 (32 Stat. 500), the allotted lands of a deceased allottee may be inherited only by Creek citizens or their descendants. where such heirs exist. But noncitizen heirs may inherit personal estate of such deceased allottee subject to administration. We conclude, under the provisions of the treaty, supra, as construed by this court and the Supreme Court of the United States in Washington v. Miller, supra. that the plaintiff in error did not inherit any part of the lands in controversy, but the lands were inherited by John Wildcat as the Creek heir. and that the judgment of the trial court must be affirmed.

Counsel for the plaintiff in error contends that the question as to Cowokochee inheriting an undivided one-half interest in the land in controversy was adjudicated by this court on the former appeal reported in 67 Okla. 263, 171 Pac. 50, and while it is true there is language in the opinion justifying this conclusion. the cause was reversed and remanded to the district court of Creek county for a new trial upon the merits of the issues joined upon allegations that the deed alleged to have been executed by Cowokochee on January 20, 1913. purporting to convey his interest in the land to Chapman, was void for fraud in its procurement. We deem it sufficient to say that, as the controversy involves the interest of Cowokochee in the land in controversy, it is proper on this appeal for the court to correct any erroneous conclusion arrived at on the former appeal. Ordinarily the rule is that the question decided by the Supreme Court on a former appeal becomes the law of the case in subsequent proceedings and will not ordinarily be reversed on second appeal where the facts are the same, but the courts uniformly hold that an appellate court may review. and reverse its former decisions in the same case where it appears that an injustice has been done by its former decision or where the mischief to be cured outweighs any injury that may be done in the particular case by overruling a prior decision. Oklahoma City Electric, Gas & Power Co. v. Baumhoff, 21 Okla. 503, 96 Pac. 578; George et al. v. Connecticut Fire Ins. Co., 84 Okla. 172, 201 Pac. 510 and 513. Unquestionably this should be done where the former opinion is contrary to a decision of the Supreme Court of the United States, which is controlling on this court.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, McNEILL, MILLER, and NICHOLSON, JJ., concur.