## ROGERS v. AMREY et al.

No. 16680—Opinion Filed Sept. 14, 1926.

Rehearing Denied Jan. 11, 1927.

**1. Covenants—Covenant of Seizin and Good Right to Convey—Breach.**

Covenants of seizin and good right to convey, contained in a statutory warranty deed, if broken at all, are broken when made.

**2. Same—Action Against Grantor for Breach—After-Acquired Title by Grantee no Defense.**

Proof of an after-acquired paramount title by the grantee, or his heirs, is no defense in a suit against the grantor for breach of his warranty.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Hughes County; W. B. Toney, Special Judge.

Action by Wilson Harjo against Etta Amrey, Ora Lee Amrey, Edith Amrey, Mable Amrey, and Orvil Amrey, for possession of real property. Defendants pleaded title through Harry Rogers. Pursuant to notice to defend his warranty Harry H. Rogers appeared, answered, and defended. Judgment was for plaintiff against defendants, and for defendants against Harry H. Rogers on his warranty. Harry H. Rogers has appealed. Affirmed.

John Rogers, for plaintiff in error.

W. C. Hall and Hugh Murphy, for defendants in error.

Opinion by RAY, C. Judy Bruner, a full-blood Creek Indian, died intestate in 1908. In 1911, the county court, in administration proceeding, distributed to Chepon Harjo, as the surviving husband, and Wilson Harjo, the son of Judy Bruner, deceased, each an undivided one-half interest in and to her allotment. March 3, 1911, Chepon Harpo, with the approval of the county court, conveyed an undivided one-half interest to Harry H. Rogers; May 19, 1911, Chepon Harjo, as guardian of Wilson Harjo, conveyed to W O. Amrey the minor's undivided one-half interest. Thereafter Harry H. Rogers, by warranty deed, in statutory form, conveyed an undivided one-half interest to W. O. Amrey, who went into possession of the allotment. October 30, 1920, Chepon Harjo, as guardian of Wilson Harjo, conveyed by guardian's deed a one-half interest to Etta Amrey, widow of W. O. Amrey, deceased, for a cash consideration of $100, the sale being confirmed by the county court.

March 20, 1923, Wilson Harjo, claiming to be the sole heir of Judy Bruner, deceased, commenced this action against Etta Amrey, Ora Lee Amrey, Edith Amrey, Mabel Amrey, and Oral Amrey, heirs of W. O. Amrey, deceased, for possession and for cancellation of the above-mentioned conveyances, and others, upon the grounds that Chepon Harjo was not the husband of Judy Bruner, deceased, and therefore not an heir, and that the probate proceedings and the guardian's deeds were void.

Etta Amrey and others, heirs of W. O. Amrey, deceased, by proper answer, joined issue on plaintiff's petition, claiming title to a one-half interest under the guardian's deeds, alleged to be valid, and to a one-half interest through deed from Chepon Harjo to Harry H. Rogers, and from Harry H. Rogers to W. O. Amrey. Harry H. Rogers, pursuant to notice to appear and defend his warranty, filed a similar answer. The trial court made and filed findings of fact and conclusions of law, and, on such findings, entered judgment against the plaintiff and in favor of the defendants as to the undivided one-half interest conveyed by the guardian's deed of March 3, 1911, and for the plaintiff, and against the defendants, as to the undivided one-half interest claimed under the deeds from Chepon Harjo to Harry H. Rogers, and from Harry H. Rogers to W. O. Amrey, upon the ground that Chepon Harjo was not the husband of the deceased allottee; and also entered judgment in favor of the defendants

against Harry H. Rogers on his warranty. Harry H. Rogers has appealed from the judgment against him on his warranty, and presents his several assignments of error under three propositions:

"1. Judy Bruner died intestate in the year 1908, while domiciled in Seminole county, Oklahoma, leaving surviving her, as her heirs at law, Chepon Harjo, her husband, and Wilson Harjo, her son, each of whom inherited an undivided one-half interest in the land in controversy herein.

"2. The conveyance from Chepon Harjo to Harry H. Rogers, and the conveyance from Harry H. Rogers to W. O. Amrey, vested in W. O. Amrey the title to an undivided one-half interest in the lands in controversy herein.

"3. The guardian's deed executed by Chepon Harjo as the guardian of Wilson Harjo, a minor, to W. O. Amrey, under date of May 19, 1911, and the guardian's deed executed by Chepon Harjo, as guardian of Wilson Harjo, a minor, to Etta Amrey under date of October 30, 1920, vested in Etta Amrey, Ora Lee Amrey, Edith Amrey, Mable Amrey, and Oral Amrey, all the right, title, and interest of Wilson Harjo, a minor, in and to the lands in controversy herein."

1, 2. The contention here is that the evidence does not sustain the finding of the trial court that Chepon Harjo was not the husband of Judy Bruner, deceased. Chepon Harjo testified that he was married to Lizzie, a mother of Judy, the allottee, and they lived together as husband and wife, and that Judy was not his wife. It is said that his testimony was impeached by affidavits made by him, but it is admitted that such affidavits are not incorporated in the record.

Bunney McCosar, a witness for defendants, testified on direct examination that Chepon Harjo had two wives, Lizzie and Judy, and that he married Lizzie first. In response to the question as to how many years Chepon lived with Judy, he answered, "Month, I think."

Mrs. Etta Amrey, one of the defendants, testified that it was understood in the community that Chepon and Judy were husband and wife, but her testimony discloses that her information was acquired from white people who did not associate with the Indians. W. B. Amrey testified that Chepon and Judy lived together as husband and wife, but admitted on cross-examination that Lizzie had been Chepon's wife before that time.

The evidence is conclusive that Lizzie

and Chepon began to live together as husband and wife before Judy was grown, and the three lived in the house together until Judy's death in 1908, and that Chepon and Lizzie continued their relations thereafter until Lizzie's death. We think this evidence fully sustains the findings of the trial court that Chepon was not the husband of Judy, and did not inherit any part of her allotment.

There was evidence to show that after Lizzie's former husband, Robert Bruner, died, she had for a time lived with Jesse Bruner, who was still living at the time of her death, and that she had one child by him. From this evidence it is argued that the marriage relation existed between Jesse Bruner and Lizzie at the time she went to live with Chepon Harjo, and, as the Creek law did not recognize plural marriages, marital relation did not exist between Chepon and Lizzie.

The only witness who testified to such relations was Bunny McCosar, who testified:

"A. When Robert died she married—she took up with Jessie Bruner. Q. Jessie Bruner? How long did they live together? A. I don't know. Q. Did they have any children? A. Yes, sir. Q. What were their names? A. Southey Bruner (Luther Bruner). Q. Southey Bruner? A. Yes, sir. Q. Well, now, when Chepon took Lizzie— A. Yes, sir. Q. Was Jessie Bruner still living? A. Yes, sir."

That evidence was insufficient to prove that marital relations existed between Lizzie and Jesse Bruner. Chepon Harjo testified that he and Lizzie were married and lived together as husband and wife until after the death of Judy Bruner, and that evidence was uncontroverted and strongly corroborated.

It being conceded that plural marriages were not recognized by this tribe of Indians, it necessarily follows that the finding of the trial court that Chepon Harjo and Judy Bruner were not husband and wife must be sustained.

The answer to the contention that W. O. Amrey acquired title by the guardian's sale of May 19, 1911, is that it only purported to be a sale of a one-half interest in and to the allotment. As to whether an indefeasible title was acquired by Mrs. Amrey by the guardian's deed of October, 1920, has no bearing upon the question of Rogers' liability upon his warranty of 1911. No authority is cited in support of the claim that the after-acquired title by Etta

Amrey, widow of W. O. Amrey, deceased, from the holder of the paramount title relieved Rogers of liability on his warranty.

Whether the guardian's deed to Etta Amrey, of October 30, 1920, was valid, as contended, or void, as held by the trial court, is not material to a proper decision of the case. If valid, its effect was to convey title to Etta Amrey and not to the heirs of W. O. Amrey. deceased. But if title had been conveyed by the guardian to the heirs of W. O. Amrey, deceased, instead of only one of the heirs, it would be no defense to the suit on the warranty, it being an after-acquired title by the heirs of the grantee from one holding a paramount title.

A warranty deed, in statutory form, is a covenant on the part of the grantor that at the time of making the deed he is legally seized of an indefeasible estate in fee simple, has good right and full power to convey, and that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession, and will defend the title against all persons who may lawfully claim the same. Section 5259, C. S. 1921.

This court has held in Faller v. Davis, 30 Okla. 56, 118 Pac. 382, and Brady v. Bank of Commerce, 41 Okla. 473, 138 Pac. 1020, that convenants of seizin and good right to convey contained in a warranty deed, made in substantial compliance with the provision of the statute, are synonymous, and, if broken at all, are broken when made, and an actual eviction is unnecessary to consummate the breach. These cases were followed and approved in Arnold v. Joines, 50 Okla. 4, 150 Pac. 130.

Plaintiff in error, in his reply brief, says that he paid to the guardian, for Mrs. Amrey, the consideration for the guardian's deed of October 30, 1920, but fails to point out the evidence to sustain such claim, and we are unable to find it.

On the authority of Cowokochee v. Chapman. 90 Okla. 121, 215 Pac. 759, and Homer v. Lester, 95 Okla. 284, 219 Pac. 392, the court below was of the opinion, and so held, that the order of distribution made by the county court in the administration proceedings, January 2, 1911, was void, and no contention is made here that those cases are not applicable and controlling. No question is raised as to the amount of the judgment.

Finding no error in the proceedings, the judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 15 C. J. p. 1246, §§61, 62; 7 R. C. L. 1156; 2 R. C. L. Supp. p. 519; 4 R. C. L. Supp. p. 513. (2) 15 C. J. p. 1297, §182 (Anno).