**RYBURN et al. v. CARNEY.**

No. 22923. Oct. 30, 1934.

Rehearing Denied Jan. 8, 1935.

Earl A. Brown, for plaintiff in error Mary F. Ryburn.

Reuel W. Little, for plaintiffs in error Beard and Little.

C. C. Hatchett and Don Welch, for defendant in error.

PER CURIAM. This is an action brought

by the plaintiff, Reuben Carney, against the various defendants to recover possession of and to quiet his title to an undivided one-half of the surplus allotment of his deceased father, Gilbert Carney. His father was a full-blood Chickasaw Indian, and had been allotted a homestead and a surplus allotment. Upon his decease, the county court of Marshall county appointed an administrator for his estate and proceedings were had in such case by which the county court attempted to and did partition this surplus allotment, giving the plaintiff's undivided one-half thereof to Aggie Carney, the white widow of the deceased. The trial court held that the whole partition proceedings were void and entered a decree for the plaintiff, Reuben Carney, awarding him the relief for which he prayed. This appeal was taken from that judgment.

■ The trial court did not err as a matter of law or abuse its discretion, under the condition of the record in this case, in allowing the plaintiff, Carney, to file an amendment to his petition and his reply on the question of ratification on the day set for trial, and in compelling the defendants to go to trial on the next day.

The case had been set for trial March 9th. By permission of counsel for plaintiff, the several defendants filed amended answers March 4th, 6th, and 7th, in which they pleaded a new defense, that of ratification. On the 9th, the day the case was set for trial, the plaintiff replied to these answers, setting up facts tending to show that the plaintiff had not ratified the partition proceedings, and tendered to the defendants the $32.42 which they contended they had paid him in the alleged ratification matter.

Out of excess of precaution plaintiff's counsel pleaded these facts, denying ratification, not only in the reply which he filed that day, but in an amendment to his petition which the court permitted him to file. On this state of facts, we do not consider that the amendment to the petition which the court allowed him to file should be regarded as of any moment, since he pleaded the same facts in his reply.

When these pleadings were filed, the defendants at once moved to strike the cause from the trial assignment for the reason the issues had not been made up for full ten days prior to that day. These motions were overruled and the case went to trial.

We do not think the court committed any error in this matter. The issues had been made up long before, and were changed by the act of the defendants themselves in filing their amended answers out of time, plead-

ing ratification. We do not think, in view of their action, they could complain when the court allowed the plaintiff to give his version of the alleged ratification by filing the reply and, out of an excess of caution, an amendment to his petition.

In the case of Lowe v. Edwards, 126 Okla. 133, 258 P. 891, the court held:

"Where the issues have once been fully made up by the filing of pleadings, the provision of section 582, C. O. S. 1921, has spent its force, and thereafter, any change in the issues caused by the filing of new or amended pleadings by leave of court or consent of the parties, does not by reason of said section work a delay of the trial."

Furthermore, if the defendants were surprised by what the plaintiff set up in his reply on the matter of ratification, their remedy, if they had one, would have been to file a motion for continuance under the statute. The defendants were estopped by their own amended pleadings, filed out of time, when they first raised this question of ratification, to complain that the court erred in permitting the plaintiff to file his reply and his amendment on the day set for trial.

■ The proceedings in the county court attempting to partition the surplus allotment of the deceased allottee, a full-blood Chickasaw, were void, because the allotment of the deceased under the federal statutes did not and could not become an asset of his estate, subject to administration by the county court as part of his estate.

On or about January 9, 1909, the allottee, Gilbert Carney, a full-blood Chickasaw Indian, died intestate. It is conceded that his only heirs were his wife, a white woman, and their child, the plaintiff, Reuben Carney; and that each owned an undivided half of the surplus allotment. Before the death of the allottee, there had been given to him a homestead allotment of 163 acres, which, under the federal law, was inalienable, and to the possession of which the plaintiff, his son, was entitled until 1931. There was also allotted to the allottee what was called a surplus allotment of 307.60 acres. The plaintiff, Reuben Carney, was a posthumous child born April 5, 1909. When he was 16 years of age, with the consent of his guardian, one C. C. Chestnut, he enlisted in the United States Navy, May 22, 1925, and remained there four years, two months and 18 days.

Shortly after the death of the allottee, C. C. Chestnut petitioned the county court of Marshall county that letters of administration on the estate of the deceased allottee be issued to him for the reason that the sur-

viving wife, Aggie Carney, had so requested in writing.

On December 28, 1909, C. C. Chestnut was accordingly appointed administrator of the estate of the deceased allottee and qualified as such. He filed an inventory which showed that the deceased allottee, Gilbert Carney, left only the homestead and surplus allotments mentioned, and that he had no personal property and had no debts. On the 26th day of April, 1909, the same C. C. Chestnut was appointed guardian of this infant child, Reuben Carney.

On December 31, 1909, Chestnut, as guardian for the plaintiff, filed in the administration proceedings of the estate of Gilbert Carney, deceased, a petition for partition of the surplus allotment between the infant, Reuben Carney, and the mother, Aggie Carney. This petition was set for hearing by the county court, notice given by publication, and by acceptance of service by the widow and by acceptance of service on the minor through his guardian, Chestnut. The county court, on May 30, 1910, entered a decree ordering partition and appointing a commissioner. This commissioner reported that the land could not be divided; that the surviving wife was willing to purchase the whole surplus allotment and pay the child for his just portion of the value of the land, to which Chestnut, as guardian, assented. The commissioner returned that the value of the whole surplus allotment was $800, of which $400 would be due this plaintiff. On June 6, 1910, the court accordingly entered a decree on the report confirming title to the whole allotment in the widow, and the payment to the guardian of $400 for the share of the plaintiff.

The widow of the allottee, Aggie Carney, later conveyed this surplus allotment, and the defendants in this case obtained whatever title they have in this surplus allotment through her.

The trial court found that these proceedings in partition in the county court of this surplus allotment were void and a nullity. We think this is true. Our court, in a long line of cases, has held that the lands of an allottee which were restricted at the time of his death did not constitute, upon his death, assets of his estate, and are not subject to administration nor sale by the county court. This because the language of the various federal statutes makes it clear that the government aimed to protect the Indian in his lifetime from recklessly incurring debts which upon his death could be collected by selling his allotment through the county court to pay the same.

In Barnard v. Bilby, 68 Okla. 63, 171 P. 444, a county court had sold the homestead of the allottee to Bilby. At page 66 of this opinion, 68 Okla., our court quotes section 16 of the Supplemental Creek Agreement, and it says:

"At the time of the sale the Act of May 27, 1908 (35 Stat. L. 312, c. 199), was in full force and effect. Section 4 of this act reads as follows:

" 'That all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of the other persons than allottees of the Five Civilized Tribes: Provided, that allotted lands shall not be subjected or held liable, to any form of personal claim or demand, against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law.'

"Under these acts the homestead in question was not subject to the payment of the debts of the deceased. In re Davis' Estate, 32 Okla. 209, 122 P. 547; Redwine v. Ansley, 32 Okla. 317, 122 P. 679; In re French's Estate, 45 Okla. 819, 147 P. 319; Roth v. Union Nat. Bank of Bartlesville, 58 Okla. 604, 160 P. 505."

Cowokochee v. Chapman et al., 90 Okla. 121, 215 P. 759, was a case just like the one here on appeal, where the county court of Seminole county attempted to partition the restricted lands of an Indian allottee, one Albert Wildcat. Syllabus 2 of the opinion reads:

"Restricted Indian lands are not subject to the payment of the debts of the deceased allottee, and for that reason are not assets of such deceased allottee's estate subject to administration, and a decree of the county court of Seminole county entered in October, 1912, distributing such lands, is not conclusive as to the heirs entitled to inherit such lands. A probate court in distributing the estate of a deceased person has no jurisdiction to distribute any estate other than the assets of the estate subject to administration, and a decree distributing the estate over which the court has no jurisdiction is a nullity."

The case of Lewis v. Gillard, 70 Okla. 231, 173 P. 1136, we think is exceptionally strong in support of this proposition. The syllabus reads:

"1. Partition of Indian lands is an 'alienation' within the meaning of the federal law imposing restrictions thereon.

"2. The county court is without jurisdiction to decree a partition of lands inherited by full-blood Indians of the Five Civilized

Tribes from a deceased allottee, who was also a full-blood Indian of said tribe.

"3. The judgment of the county court, attempting to decree a partition of restricted Indian lands, is void, and may be attacked collaterally, notwithstanding the fact the records of the proceedings in partition do not disclose that such lands are restricted."

See, also, to the same general effect, the case of Kolb v. Ball, 101 Okla. 100, 223 P. 660; Bilby v. Noble, 106 Okla. 302, 234 P. 198; Wolf v. Gills, 96 Okla. 6, 219 P. 350; Sandlin v. Barker, 95 Okla. 113, 218 P. 519; Hoodenpyle v. Champion, 71 Okla. 270, 177 P. 369.

Counsel for plaintiffs in error filed an elaborate argument endeavoring to uphold the partition proceedings in the probate court and have cited a number of cases, all of which, we think, are distinguishable from those cited above. We can find no cases in this state which overrule the cases of Barnard v. Bilby, supra, Cowokochee v. Chapman, supra, and Lewis v. Gillard, supra. In this connection, it must be remembered that the county courts of this state have no general jurisdiction like a district court, in partition.

Article 7 of section 12 of the Constitution says:

"Provided that the court shall not have jurisdiction: * * * nor to order or decree the partition or sale of real estate not arising under its probate jurisdiction."

Since our courts have uniformly held that the restricted allotment of an Indian does not become upon his decease an asset of his estate, we think it must follow that the probate court had no jurisdiction to partition, just as it had no jurisdiction to pay the debts of the allottee contracted by him in his lifetime. For a case illustrative of this principle, see Pioneer Mortgage Co. v. Carter, 84 Okla. 85, 202 P. 513.

Without pursuing this subject at further length, we think the trial court was right in holding the partition proceedings in the county court absolutely void and a nullity, and, therefore, his judgment awarding one-half of the surplus allotment to the plaintiff was right.

Beard & Little, counsel for defendants, complained because the trial court refused to instruct the commissioners in partition to satisfy the right of the plaintiff out of the west half of the surplus allotment, which had been conveyed by the widow, Carney, to the defendant, Ryburn. Without going into details, we think this complaint is without any warrant whatsoever. We have held above that all the proceedings in partition

were void. That being the case, the widow, Carney, had no right to convey to any of the defendants as she attempted to do, and since such deeds were and are void, no obligation rested on the district court to try to adjust the equities between the defendants on this point.

■ The trial court did not err in refusing to hold that the acts of the plaintiff subsequent to the partition proceedings in the county court did not constitute a ratification of such partition proceedings.

The guardian, Chestnut, died April 2, 1927, and his wife was appointed administratrix of his estate.

As we indicated in the first division of this opinion, the defendants just before trial filed separate amended answers, in which they set up various acts and conduct of the plaintiff which they insisted constituted ratification by him after he had attained his majority. Among other things, his guardian had paid him certain ' sums of money as shown by the guardian reports; that he became 21 years of age April 5, 1930; that on April 22, 1930, Reuben Carney filed suit in the district court of Marshall county against Lula Chestnut, executrix of the estate of his former guardian, and asked an accounting in the sum of $32.42.

The plaintiff, in explanation of this suit brought by him against the widow of his former guardian, testified that a son of the guardian, named Claud Chestnut, came to the plaintiff in Madill and stated that the guardianship proceedings would have to be closed up, since his father was dead, by suit in the district court against the administratrix of his father's estate. That Claud took him to a lawyer named Ryder in Madill, who had been attorney for the administrator and guardian, Chestnut, and was not plaintiff's attorney; that Ryder had certain papers prepared which he signed. The attorney, Ryder, testified that he prepared all the papers, petition, answer, and decree, in the suit brought in the name of the plaintiff in 1930, against Mrs. Chestnut, widow of the administrator, which gave plaintiff a judgment for $32.42. Claud Chestnut and Reuben Carney agreed that was coming to him. Ryder testified that it was agreed that "it ($32.42) should be paid to me as attorney fees and court costs. I got the $32.42 less costs." Plaintiff received nothing from such suit.

There is no substantial evidence in this record to prove that the administrator, Chestnut, collected monies from the sale of the surplus allotment of the widow, or as

rental from such property, and that plaintiff knew such facts. At least, we think it fairly certain that Reuben Carney did not understand that to be the case. We think, also, it is quite clear that when he signed the petition to sue Chestnut's administratrix, he let her attorney, Ryder, handle the whole matter and collect and keep the money, and did so without serious reflection, and without any intended waiver of his rights in this case.

Our statute, on the acceptance of benefits from a contract, etc., section 5247, C. O. S. 1921 (9668, O. S. 1931), reads as follows:

"Any person or corporation having knowingly received and accepted the benefits or any part thereof of any conveyance, mortgage or contract relating to real estate, shall be concluded thereby, and estopped to deny the validity of such conveyance, mortgage or contract, or the power or authority to make and execute the same, except on the ground of fraud; **but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of such benefit received by themselves.**"

In Bruce v. Cosden Oil & Gas Co., 119 Okla. 28, 246 P. 826, syllabus 2 reads as follows:

"An adult who accepts the benefits of an oil and gas lease executed and delivered by her guardian, through probate sale proceedings during the minority of the plaintiffs, where the recorded lease properly describes plaintiff's land, thereby ratifies and adopts the conveyance as her individual conveyance and lease, **if the benefits are accepted with full knowledge of the circumstances and conditions of the transaction resulting in the lease.**"

We think the trial court was justified in holding that there was no valid ratification here by the plaintiff of the partition of the surplus allotment. At any rate he tried the case, saw and heard the witnesses, the plaintiff, and the lawyer Ryder, and was in a much better position to weigh their testimony than we are.

The judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys C. A. Dickson, A. D. Cochran, and Charles B. Steele in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Dickson and approved by Mr. Cochran and Mr. Steele, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.