HOUSE v. UNITED STATES et al.

UNITED STATES v. HOUSE et al.

HOUSE et al. v. UNITED STATES et al.

Nos. 2809, 2810, 2814.

Circuit Court of Appeals, Tenth Circuit.

Aug. 25, 1944.

Rehearing Denied Sept. 21, 1944.
Writ of Certiorari Denied Dec. 4, 1944.
See 65 S.Ct. 270.

C. P. Gotwals, of Muskogee, Okl. (Wm. A. Killey and James D. Gibson, both of Muskogee, Okl., on the brief), for H. G. House.

E. C. Hopper, of Eufaula, Okl., for H. G. House and R. L. Simpson.

Creekmore Wallace, of Oklahoma City (Hugh A. White and Roy White, both of Eufaula, Okl., on the brief), for Leona Richard Fox and others.

Fred W. Smith, Atty., Dept. of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Charles O. Butler, Sp. Asst. to Atty. Gen., and Vernon L. Wilkinson, Atty., Dept. of Justice, of Washington, D. C., on the brief), for the United States.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Leona Richard Fox, Wanda Richard Curtis, Florence Marie Barnett, now Townsend, George Barnett, Jr., and Rina Richard Howell, now Urquhart, instituted this action against H. G. House in the state court of Oklahoma. The petition alleged that plaintiffs were the heirs of Eastman Richard, deceased; that the defendant had occupied a fiduciary relationship toward the deceased during his lifetime; that as a result thereof he had received money and property of a value in excess of $300,000 which belonged to the deceased, and that they were entitled to an accounting thereof at his hands, as heirs of the deceased. An amended complaint was filed in which H. G. House and R. L. Simpson were joined in their representative capacities as executors of the estate of Eastman Richard. The action was removed to the United States District Court for the Eastern District of Oklahoma.

The deceased was a full blood restricted Creek Indian, and all of the plaintiffs, save one, are restricted Indians. The action was removed pursuant to the provision of the Act of April 12, 1926, 44 Stat. 239. The United States filed an amended bill of intervention in which it alleged the restricted Indian status of the deceased and of the plaintiff heirs. It further alleged that the greater portion of the estate of the deceased Eastman Richard consisted of restricted property; that the defendant H. G. House secured the release of large funds from the Department of the Interior through misrepresentations. It also alleged the fiduciary relationship existing between House and Richard, and that as a result thereof the defendant House came into the possession of large sums for which he should be compelled to account. All parties have appealed from the decision of the trial court. The points raised

by the respective appeals will be developed in the course of the opinion. A somewhat detailed statement of the facts is necessary to a comprehension of the questions raised.

Eastman Richard was enrolled as a full blood Creek Indian. He was a poor, unlearned Indian, of very limited intelligence. His own allotment, as well as property he inherited from other Indians, became very valuable when oil was discovered thereon. The discovery of oil made him a very wealthy man. All the money which was accumulated from oil royalties came from restricted property and was under the control of the Secretary of the Interior. The Department released more than $1,300,000 to Richard over a period of ten years prior to the time House became active in his affairs. Richard soon experienced all the woes and tribulations which usually befall poor, ignorant Indians when they come into great wealth.

Richard had a number of wives. It appears that he may have had several wives at the same time. He had children by most of these wives. He had many poor relatives whom he supported. He paid their bills, bought their groceries and automobiles, and furnished them living quarters. At one time he expressed a desire to move to Checotah to school his children. When opposition developed to this, he established his own town, which he called Richardsville. Title to the land on which Richardsville was established was taken on a Carney-Lacher form of deed. He owned and operated a general mechandise store, a bank, a cotton gin and a drug store. He also bought numerous houses and barns. He hired managers to operate these various enterprises for him. In addition to spending the $1,300,-000 which was released to him, he contracted debts of approximately $117,000. This indebtedness consisted of mortgages, judgments and open accounts.

This was his status about June 16, 1924, when he began his association with House. On this date House executed a contract with Richard in which he undertook to secure a settlement of all his outstanding debts and obligations. The contract left blank the amount of his fee for this service. After the execution of this contract, House went to Washington and worked out an arrangement with the Commissioner of Indian Affairs for release of sufficient funds to pay these debts. The Department also approved a fee of $7,000 to House for his services in these matters.

On November 9, 1925, a new agreement was made between Richard and House. It provided in substance that House was to be retained and employed as Richard's agent and business manager for a term of five years, and was to receive as compensation fifteen per cent of all sums received by Richard. Three days later House procured a written agreement from Richard in which he agreed to give House a note for $25,000 secured by a mortgage on all his property as security for any sums which might become due to House under his contract of employment. On March 6, 1930, House obtained a further note for $12,500, secured by a chattel mortgage on personal property and royalties.

After the execution of the contract of November 9, 1925, House took active charge of Richard's affairs. He procured letters from Richard to Mr. Wallen, the Superintendent of Indian Affairs at Muskogee, and to the Riggs National Bank, directing them to send all payments to Richard to House's private postoffice box. All checks were made payable to Richard. At first these checks were endorsed by Richard and were then deposited to his credit in the bank. Payments were made from this account upon the check of Richard countersigned by House. This procedure was followed until January 1, 1931. Thereafter House deposited all checks received by Richard in his own account in the name of H. G. House Agency, where the funds were co-mingled with other funds in the account. From that time all payments made on behalf of Richard were made upon checks signed by H. G. House, Agent. Most of these checks were countersigned by Richard. This practice continued until Richard's death. After the contract of November 9, 1925, the Superintendent of the Five Civilized Tribes at Muskogee released to Richard by monthly check his entire accumulated monthly income. Such payments were made by the Superintendent without authorization or direction from the Secretary of the Interior or the Commissioner of Indian Affairs at Washington.

The accounting was divided into five sections. The first section included the time prior to November 9, 1925, during which House attempted to clear up the outstanding indebtedness of Richard. Sec-

tion two covered the period from November 10, 1925, to December 31, 1930, the time during which the checks made payable to Richard were deposited in his account in the bank and were dispersed by checks signed by him and countersigned by House. The third section included the period from January 1, 1931 to the time of Richard's death, covering the period during which Richard's checks were deposited in the account of H. G. House, Agent, and were dispersed by checks signed by House, as Agent, and countersigned by Richard. The fourth section of the account dealt with insurance which was placed on Richard's property through House, and covered disbursements made by House for the payment of insurance premiums. The fifth section of the account related to fees which House had received from Richard.

■ Appellant House contends that the cause of action was not removable to the United States District Court under Section 3 of the Act of April 12, 1926. This contention is based on the argument that the funds involved were not restricted. Our conclusion, hereinafter set out, that the funds were restricted, should dispose of this contention. It is true, as pointed out by House, that the petition upon its face failed to allege facts showing that the action was removable. This action was not, however, removed under the general removal statute, but under Section 3 of the Act of April 12, 1926. The broad general purpose of this Act is to enable litigants claiming an interest in allotted lands or in the proceeds therefrom to file suit in the state courts, serve the government with notice of the pendency of the suit, and thus bind the government by the result of the litigation. The government by the passage of this Act yielded to that extent its exclusive jurisdiction of its restricted Indian wards, but in doing so it reserved the right to remove all such cases to the federal court for trial. Caesar v. Burgess, 10 Cir., 103 F.2d 503; United States v. Fixico, 10 Cir., 115 F.2d 389, 392. The right of removal comes when a notice is served upon the government showing that an interest of one of its Indian wards is involved in the action. The notice in this case, served upon the Superintendent of the Five Civilized Tribes, specifically set out that the plaintiffs were restricted Indians and that the suit involved the right to inherit allotted lands and moneys of the deceased restricted Indians. This clearly gave the government the right to remove the case to the federal court under Section 3 of the Act of 1926.

■ Appellant House challenges the court's finding that the funds in controversy were restricted. It is conceded that these funds came from restricted property and were originally restricted in the hands of the Secretary of the Interior. But it is argued that restrictions were removed when the Superintendent of the Five Civilized Tribes released Richard's monthly income to him as it accrued. It is urged that he had authority to remove the restrictions by releasing these funds under the Act of February 14, 1920, 41 Stat. 408–426, as interpreted by the Department in written opinions and by its course of conduct.

Section 18 of the Act, 25 U.S.C.A. § 356, as far as material, provides:

"That hereafter no undisputed claims to be paid from individual moneys of restricted allottees, or their heirs * * * shall be forwarded to the Secretary of the Interior for approval, but all such undisputed claims * * * heretofore required to be approved under existing law by the Secretary of the Interior shall hereafter be paid, approved, rejected, or disapproved by the Superintendent of the Five Civilized Tribes of Oklahoma * * *."

■ A. M. Landman, the present superintendent of the Five Civilized Tribes, and J. T. Wilkinson, his assistant, testified that their construction of the Act was that the Superintendent of the Five Civilized Tribes was authorized to make payments to individual Indians of their funds without the approval of the Secretary of the Interior or the Commissioner of Indian Affairs. House also introduced in evidence a ruling by Charles D. Mahaffie, under date of February 7, 1919, holding that a request or demand by an Indian for a part of his funds was the presentation of a claim and that the Superintendent was authorized to pay such claims concerning which there was no dispute. The government relied upon a later ruling by Solicitor Edmund Booth, holding that the phrase "undisputed claims" referred to claims of third parties and that a request or demand by an Indian himself for any part of his funds was not a claim within the meaning of the statute. We think

the construction placed upon the Act in the Booth opinion is correct. But, in any event, the Mahaffie opinion does not support the position contended for by House. All that it held was that a request by an Indian *for a part* of his funds was the presentation of a claim that could be paid without the approval of the Commissioner or the Secretary of the Interior. Here the Superintendent effected an arrangement by which all funds were released to Richard as they accrued, to be handled by him without supervision or control. Neither the Act nor the Mahaffie opinion justifies such a course of conduct.

House cites American National Bank v. American Baptist Home Mission Soc., 2 Cir., 106 F.2d 192, in support of his contention that the Superintendent of Indian Affairs could release these funds, as he did, without the approval of the Commissioner of Indian Affairs or of the Secretary of the Interior. Concerning this case, it is sufficient to say that it is distinguishable upon the facts. It involved the release of specific funds for a definite purpose. It did not involve, as this case does, a relinquishment of all funds to the restricted Indian with permission for him to handle these funds free from any supervision by the Department. This was clearly contrary to the provisions of Section 18 of the Act of 1920, as interpreted by the Booth opinion, and to the regulations of the Department, issued in 1925.[1] It is our conclusion that the funds in controversy were restricted, as found by the court, and that the court had jurisdiction of the subject matter and the parties to the action.

It is not necessary to the decision of this case to consider the conclusion of the court that the contract of November 9, 1925, which gave House fifteen per cent of all funds coming into Richard's possession, amounted to an assignment of such funds, because the right to an accounting flows from the fact that these funds were restricted and were improperly released and that the parties to the action are wards of the government.

The government challenges the court's finding that Richard was mentally competent. The record on this question is voluminous. We have carefully examined it and it is our conclusion that the court's finding in this respect finds ample support in the record. A recital of the evidence which leads to this conclusion would add nothing of value and would only unduly extend the opinion.

There is no legal ground for holding House liable for the funds involved in the first section of the accounting. These funds were used for the payment of Richard's outstanding debts, with the approval of the Department in Washington, after the matter had been discussed with the Department. The release of the funds was specifically authorized by the Commissioner of Indian Affairs. While there is no direct evidence that the Department in Washington approved the fee of $7,000 to House for his services in settling these debts, it did authorize the issuance of a check of $7,000 to him, and the presumption therefore must be that it approved his fee and authorized the release of restricted funds in an amount necessary to pay it.

The theory upon which the court rendered judgment against House was that these restricted funds were unlawfully released to Richard by the Superintendent of the Five Civilized Tribes without the approval of the Commissioner of Indian Affairs or of the Secretary of the Interior, and that House should be compelled to account for such of the funds as he received as a result of his contract with Richard and of his participation in these transactions. In this we think the court was correct. Congress, by the Act of May 27, 1908, 35 Stat. 312, provided that the government should control and preserve the restricted property of Indians falling within the ambit of the Act. Sunderland v. United States, 266 U.S. 226, 45 S.Ct. 64, 69 L.Ed. 259; United States v. Brown, 8 Cir., 8 F.2d 564; United States v. Mott, 10 Cir., 37 F.2d 860. The manifest intent of the Act is to protect all restricted funds, whether consisting of allotments or proceeds or income therefrom. House was an attorney skilled in the knowledge of Indian law, and especially the law relating to the Five Civilized Tribes. He knew as a matter of law that these funds were restricted and under the supervision of the Secretary of the In-

---

[1] The 1925 regulations by the Department contained the following: "For interpretation of the * * * Act of Feb. 14, 1920, see opinion of November 4, 1921, of the Solicitor for the Department of the Interior, as contained in his letter of that date to the Secretary of the Interior."

terior. He is charged with knowing that the Superintendent of the Five Civilized Tribes lacked authority to remove the restrictions on these funds by a blanket release of all funds to Richard.

The record does not support the government in its contention that the funds were released to House. The checks were all made payable to Richard. While for a part of the period they were deposited in the House Agency account, they were placed there as Richard's money. Even during that period of time, Richard countersigned the checks for the disbursement of these funds. The legal conclusion must be that these funds were released to Richard.

The amount for which judgment was rendered against House on the various sections of the accounting represents the amount of these restricted funds which he actually received, together with interest thereon. To discuss each item of each section of the account in detail would extend this opinion beyond all reasonable bounds. We think it is sufficient to say that House cannot be heard to complain because he is required to account for the restricted funds which he actually received.

It is contended that in any event the court should have allowed compensation for the value of the services rendered by House on a quantum meruit basis. The authorities upon which House relies to sustain this position are not in point. They arise in situations where the parties are competent to contract and deal with each other. But here we have a ward of the government who is incompetent and who is under the protection of the sovereign. Here we are dealing with funds that could be disbursed only with the approval of the Secretary of the Interior. To give House judgment for the value of his services would be to give him a part of these restricted funds which he could receive lawfully only with the approval of the Secretary of the Interior. This would tend to frustrate the policy of the statute passed for the protection of restricted funds belonging to wards of the government. Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820.

## No. 2814

In the judgment from which this appeal is taken, the court rendered judgment against R. L. Simpson in his representative capacity as executor of the estate of Eastman Richard, deceased, for $940 and interest, and against H. G. House in his representative capacity as executor of the estate of Eastman Richard, deceased, as well as in his individual capacity, for $8,255.41. Appellants in this appeal contend that the court lacked jurisdiction of the subject matter and of the parties. Lack of jurisdiction over the subject matter is predicated upon the contention that the funds sought to be recovered were unrestricted funds. Our conclusion that the funds in question were restricted disposes of this contention.

A more serious question is presented by the contention that the court lacked jurisdiction to render a judgment against House and Simpson as executors of the estate of Eastman Richard. The Oklahoma constitution confers jurisdiction of probation of estates upon the county courts. 58 O.S.Ann. § 1. It is well settled that matters of purely probate character are not within the jurisdiction of the federal courts. Ellis et al. v. Davis, 109 U.S. 485, 3 S.Ct. 327, 27 L.Ed. 1006; Farrell v. O'Brien, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101; Miami County National Bank of Paola, Kansas v. Bancroft, 10 Cir., 121 F.2d 921.

We think the court exceeded its jurisdiction in rendering judgment against House and Simpson as executors of the estate. Wells v. Helms, 10 Cir., 105 F.2d 402. In their representative capacity they were officers of the county court and were beyond the jurisdiction and reach of the federal court.

The whole theory of this case is bottomed on the proposition that the funds in controversy were restricted, and, as pointed out, the court's judgment was for the recovery of restricted funds. The amended complaint charged that House and Simpson as executors received and misappropriated restricted funds. They did not receive and disburse these restricted funds in their official capacity. Oklahoma has consistently held that restricted funds, not being subject to the payment of debts, are not assets which come into the possession of an administrator of an estate and that restricted property is not subject to the jurisdiction of the probate court. Pitts v. Drummond, 189 Okl. 574, 118 P.2d 244; Ryburn et al. v. Carney, 170 Okl. 255, 39 P.2d 9; Moore v. Jefferson, 190 Okl. 67, 120

P.2d 983. Not having received these funds in their official capacity, requiring them to account for them in no wise interfered with the probate jurisdiction of the county court or with any official act of the executors as officers of the court.

The judgment against House as executor and in his individual capacity for $8,255.41, and interest, is modified by striking therefrom that part rendering judgment against him as executor, and as so modified, is affirmed.

The judgment against Simpson as executor of the estate of Eastman Richard, for $940, and interest, is reversed and the case as to him is remanded for proceedings in conformity with the views expressed herein.

In all other respects, the judgment of the trial court is affirmed.