In the Matter of the ESTATE of
Thompson BROWN, Deceased.

No. 52315.

Supreme Court of Oklahoma.

Sept. 18, 1979.

Minter & Ables, Madill, Rex E. Herren, Trial Atty., U. S. Dept. of Interior, Anadarko, for appellants.

I. C. Sprague, Tishomingo, for appellee.

DOOLIN, Justice:

We review and entertain the appeal in this matter as one affecting a substantial right under 58 O.S.1971 § 721(8) and Rule 1.60(g), 12 O.S.1971 Ch. 15, App. 2. We answer by this opinion whether or not a full-blooded Indian heir to real property, who took title by inheritance or devise from a restricted full-blooded allottee of such land may, by will, order such premises sold to satisfy the testator's debts. We decide such a testator may and give an affirmative answer.

Thompson Brown, a full-blooded Chickasaw Indian died testate, a resident of Johnston County, Oklahoma. By his will he declared he was indebted to E. R. (who was also named executor) and directed *any* portion of his estate to be sold to satisfy such debt if the debt remained unpaid; the rest and residue of the estate he left to his wife and children.[1]

Two of the heirs (adult children) are of one-half Indian blood; the surviving spouse has no Indian blood.

Testator had, prior to his death, inherited an undivided interest in the allotment of Nannie Brown, a full-blooded Chickasaw Indian. Nannie Brown died January 1973, without having restrictions removed as to her particular allotted lands.

The property acquired by the testator and around which the controversy rages, is located in McClain and Garvin Counties, Oklahoma.

E. R., as a creditor established his claim in the amount of $18,238.02, was due and owing. No appeal was taken from such order of the Court entered October 1977.

Executor thereafter filed a petition for sale of real property based both on the approved claim and under the power of sale contained in the will. Objections were made by the widow, adult children and the United States Department of Interior (heirs) in the form of a motion to dismiss. The Court at hearing and after consideration of briefs of the heirs dismissed and overruled such objections and motion. The heirs filed timely appeal.

The primacy of the United States Congress and the authority of the United States of America to exercise its plenary power over the affairs of Indians is not an issue; we acknowledge such authority and primacy.[2]

The heirs first refer us to the Act of Congress, May 27, 1908, Ch. 199, § 4, 35 Stat. 313 which provided:

"   .   .   .   [t]hat *allotted lands* shall not be subjected or held liable, to any form of personal claim, or demand, against the *allottees* arising or existing prior to re-

---

**1.** Omitting the introduction, the will provided:

"(1) I declare that I am at the present time indebted to E. R. of Tishomingo, Oklahoma, in the amount of several thousand dollars which he has advanced to me for expenses during the progress of litigation in the probate of the estate of Nannie Brown, now Johnston, deceased. I direct that in the event that the sums so advanced and which may be advanced hereafter by said E. R., if unpaid in whole or in part at the time of my death, be first paid from my estate and for such purpose I authorize, direct and empower my executor hereinafter named, if necessary, to sell without court order any portion of my estate, including lands otherwise restricted by law against alienation which I may own at the time of my death.

(2) All the rest and residue of my property, real and personal of every kind and wherever situated, whether vested or contingent at the time of my death I give devise and bequeath to my wife, Lucy Brown, my son Thompson Brown, Jr., and my daughter Linda J. Brown, in equal shares of an undivided one-third interest each. Absolutely free and clear of any conditions or restrictions whatever."

**2.** See Oklahoma's Enabling Act, June 16, 1906, Ch. 3335 §§ 1 & 3, 34 Stat. 267. The Five Civilized Tribes are the subject of special provision concerning restricted lands, see 25 U.S.C. § 355.

moval of restrictions . . ." (Emphasis ours).

We are also referred to the prior Act of April 26, 1906, Ch. 1876, particularly § 23, 34 Stat. 145 which provides that no will of a full-blooded Indian devising real estate will be valid if such will disinherits the parent, wife, spouse, or children of a full-blooded Indian unless approved by authorized personnel.

■ The application of § 4 of the 1908 Act is restricted to the allottee's allotted or given land. The testator (Thompson Brown) was not the allottee of the lands in Garvin and McClain Counties; Nannie Brown was. To put it another way, the testator was not the restricted Indian to whom the lands in question were allotted; that was Nannie Brown. We do not believe that § 4 of the Act of 1908 or § 23 of the 1906 Act have prohibited Thompson Brown from making a will with a power of sale. Nor do we believe that *Ryburn v. Carney, 170 Okl. 255, 39 P.2d 9 (1934)* when it quotes from *Cowokochee v. Chapman, 90 Okl. 121, 215 P. 759, 760 (1922)* to the effect that specific lands restricted to a given allottee are not subject to payment of the restricted allottee debts is controlling. The *Cowokochee* decision as well as *Barnard v. Bilby, 68 Okl. 63, 171 P. 444 (1917)* are cases having to do with the individual allotment of a specific allottee and whether such premises are subject to sale for debts. Here the question is the right of an Indian heir to dispose of inherited lands by will, albeit such lands were the restricted property of an ancestor (Nannie Brown).[3]

After the passage of the Act of 1906, 1908, supra, this Court decided the case of *Tucker v. Masters, 97 Okl. 70, 222 P. 259 (1923)* which has not been overruled or modified. We held at page 261:

"Section 4 (of the Act of 1908) protects the allotment in the hands of the heirs of the allottee from the liabilities of the allottee and from being subjected to any kind of execution or forced sale for pay-

ment of indebtedness incurred by the allottee during his lifetime. In other words, it merely extends the restriction and exempts the allotment from the indebtedness. Section 23 of the Act of 1906, authorizing the execution of a will by the allottee, places the disposition of the allotment after death in the hands of the allottee, and he may make such disposition of his allotment as he deems proper, and, if he desired to waive the restriction and exemption placed upon the allotment, he may do so by will."

■ The heirs argue that the Act of April 12, 1926, Ch. 115 amending § 9 of the Act of 1908, 44 Stat. 239 has restricted the power to devise and they cite in support thereof *Chisholm v. House, 160 F.2d 632 (10th Cir. 1947)*. The Act of 1926, supra, amended § 9 of the Act of 1908. Section 9 is applicable to *conveyances* not devises. The 1926 Act further provided that the homestead of the deceased Indian shall remain inalienable unless restrictions against alienation are removed by persons authorized. It is true that the Act of 1908 provided that the provisions of the 1906 Act, § 23, were to be applied to wills; but § 23 of the 1906 Act has limited application for its states in pertinent part that no will of a full-blooded Indian devising real estate shall be valid if it disinherits parent, wife or children. We cannot conclude that the Act of 1926 has application to the devises by will except as a limitation on disinheritance.

*Chisholm v. House, supra,* concerned itself with many matters, but for our purposes that court held *conveyances* were restricted by the 1926 Act, not necessarily devises, for it did not speak to disposition by will.

■ Regardless of the application of the limitations of the 1926 Act and *Chisholm v. House, supra,* we think the controlling Federal enactment is contained in the Act of August 1947, Ch. 458, § 1, 61 Stat. 731, providing:

---

3. *Ryburn, Cowokochee* and *Barnard* are cases dealing with intestacy and are not definitive of devices in wills or powers of sale. They deal with the restricted Indians' rights under his own restricted allotment; not our case.

"(a) . . . *No conveyance* . . . of any interest in land acquired before or after . . . (August 4, 1947) by an Indian heir or devises of one-half or more Indian blood, when such interest in land was restricted in the hands of the person from whom such Indian heir or devisee acquired same, shall be valid unless approved in open court by the county court of the county in Oklahoma in which the land is situated; (b) petition for approval of *conveyance* shall be set for hearing . . . The grantor shall be present at said hearing . . . " (Emphasis ours).

■ The quoted portion of the Act of 1947, we interpret as being limited by its own terms to *conveyances.* Thompson Brown, the testator, has made no conveyance. The same act is further complicated by the introductory clause of its first sentence: "(a) That except as provided in subdivision (f) of this section, no conveyance" etc., etc.[4]

We deem it further necessary to point out that the Act of 1908, § 9, the Act of 1926 referring to § 9 of the 1908 Act, the Act of 1947, all contain a provision similar to that found in the Act of 1947: to-wit:

"That all restrictions upon all lands in Oklahoma belonging to members of the Five Civilized Tribes, whether acquired by allotment, inheritance, devise, gift, exchange, partition or by purchase with restricted funds, of whatever degree of Indian blood, and whether enrolled or unenrolled, shall be, and are hereby, removed at and upon his or her death:"

The Supreme Court of the United States has observed in *Shade v. Downing, 333 U.S. 586, 68 S.Ct. 702, 92 L.Ed. 894 (1948):*

"Death of allottee of Five Civilized Tribes in Oklahoma operates to remove statutory restrictions on alienation. Act April 12, 1926, § 1, 44 Stat. 239; Act August 4, 1947, § 1, 61 Stat. 731."[5]

Although that case is distinguishable in fact, we find it more than persuasive.

■ The second Proposition raised by the heirs is their attack upon the jurisdiction and venue of the District Court of Johnston County, Oklahoma, to sell land in Garvin and McClain Counties.

The Act of 1947, § 3 provides:

"The State Courts of Oklahoma shall have exclusive jurisdiction of all . . . proceedings to administer estates or to probate wills of deceased Indians of the Five Civilized Tribes . . . under section 1 of the Act of June 14, 1918, Ch. 101, 40 Stat. 606."

We conclude that Congress has approved and left to the District Courts of Oklahoma, the procedures with reference to probate, including sales of realty, and more importantly, Oklahoma Courts have jurisdiction.

■ While it is true 58 O.S.1971 § 422 requires sales at public auction to be made in the county where the land is situated, 58 O.S.1971 § 5(1) requires wills to be probated in the county in which the decedent was a resident at the time of his death. Parties agree that Thompson Brown was a resident of Johnston County at his death and therefore the venue for probate proceeding was in Johnston County, Oklahoma.

■ The District Court in Johnston County exercising proper venue and jurisdiction was therefore authorized and empowered to entertain a petition for sale of realty. Oklahoma has never required nor do the statutes contemplate or permit an "in state" ancillary probate proceedings of an Oklahoma resident. 58 O.S.1971 §§ 421 & 423 indicates to us that only the "residential County" (Johnston) shall enter the order for sale and entertain proceedings on return, confirmation, etc. To hold otherwise is nonsense.

Trial Court AFFIRMED.

---

4. § 1 of the Act of 1947 deals with minors requiring "that sales of the interests of minor and incompetent persons shall be made in conformity with the laws of the State of Oklahoma.

5. For a later Act see Act of August 11, 1955, Ch. 786 § 1, 69 Stat. 666.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.

HODGES, J., dissents.